# CHARLESTON.

## THOMAS *v.* ELECTRICAL COMPANY.

Submitted September 3, 1903—Decided December 12, 1903.

1. PLEADING—*Declaration.*

It is only necessary to state facts, and never is it necessary to aver matter of law in declaration. (Hogg's Plead. & Forms, 59). (p. 398).

2. PLEADING.

Surplusage in pleading does not vitiate. (Idem). (p. 398).

3. NEGLIGENCE—*Question for Jury.*

Where there is no controversy as to the facts or inferences that may be fairly drawn from them, the question of negligence is one of law for the Court. Where such is not the case, the question is for the jury. (p. 398).

4. ELECTRIC COMPANIES—*Negligence.*

It is the duty of electric companies to use very great care to keep the insulation of its dangerous wires perfect at places where people have a right to go for work, for business or for pleasure. (p. 399).

5. ELECTRIC COMPANY—*Negligence.*

When injury to a person comes from contact with a live electric wire from bad insulation at a place where there ought

to be good, safe insulation for safety to persons, it is a case of negligence on the part of the electrical corporation rendering it *prima facie* liable.    (pp. 399, 400).

6.  NEGLIGENCE.

    If one take hold of an electric wire at a place where it ought to be safely insulated for safety to persons, and is injured by reason of defective insulation, he not knowing its defect, he is not from so doing guilty of contributory negligence forbidding recovery of damages.    (p. 401).

7.  ELECTRIC COMPANY—*Negligence.*

    One coming in contact with a live electric wire in discharge of duty will not, on account of so coming in contact, be guilty of contributory neglegence, if it was the duty of the corporation to properly insulate the wire at the place of injury, and it has neglected to do so, and the person knows not the defect of insulation.    (p. 403).

8.  ELECTRIC WIRE.

    In places where electric wires should be insulated for safety to the persons, one may assume that they are so insulated, if he know not to the contrary.    (p. 403).

9.  ELECTRIC COMPANY.

    A corporation or person operating a plant for electric lighting must anticipate injury as likely to happen to persons from contact with its wires by reason of defective insulation at places where the law requires such insulation.    (p. 403).

10.  VERDICT.

    The verdict of a jury in an action for death from wrongful act can not be set aside for excessiveness in an amount under $10,000, their assessment being final, unless the verdict be the result of passion, prejudice, partiality or corruption on the part of the jury.    (p. 405).

11.  WITNESS—*Testimony—Error.*

    The refusal of a court to permit a witness to answer a question will not be considered in the appellate court. when it is not stated or shown what it was expected the answer would be, unless the question very clearly imports what such answer must be.    (p. 406).

Error to Circuit Court, Ohio County.

Action by W. F. Thomas, administrator, against the Wheeling Electrical Company. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

CALDWELL & CALDWELL and J. A. HOWARD, for plaintiff in error.

J. J. CONIFF, for defendant in error.

BRANNON, JUDGE:

On the front of the Grand Opera House on the corner of Market and Twelfth streets, in the city of Wheeling, is a balcony eight feet long, three feet wide, thirty inches high, with a rail eight inches wide. Out from the building at the street curb stood a pole, and from it two wires conveying electricity for light belonging to the Wheeling Electrical Company extended by a sharp angle to a bracket on the north wall of the opera house. These wires passed close to the rail of the balcony, eighteen or twenty inches from it, one six inches above the other. The balcony is used for people to go out upon through a window of the opera house opening upon it. There had been a converter or transformer on this balcony from which two wires ran to the main wires just mentioned; but the transformer was removed and the two wires connecting it with the wires outside the balcony were cut away at the point of their union with the two wires outside the balcony, and in doing so the defendant left the ends of the wires stick out, and did not properly wrap them, and did not cover them with tape, and the old insulating material did not cover the point, and was worn and dangerous. It was clearly shown that the wires in this condition were extremely dangerous; this was not a disputed fact, the officers of the company stating on the stand that they were so dangerous that contact with them would kill. They remained in such condition a long time, without inspection. An opera company which had leased the building for a term had been performing in it, and had tacked advertising banners on the balcony, and when about to close its performances there employed Earl J. Thomas, twenty-one years of age, five feet eleven inches high, to gather these banners on Market treet, and he went out upon this balcony to untack from the balcony some banners which had been tacked upon it, one of them on the north end of the balcony by which the wires ran, the banner being tacked on the top rail and on the lower part of the balcony. While engaged in this work, between seven and eight o'clock of the night of 2d November, he came in contact

with one of the electric wires. He was seen grasping the wire with his left hand, his right hand on the left wrist, leaning against the corner of the brick wall at the junction of balcony and wall, apparently fastened or transfixed by the shock, and when jerked away by a person who went to his rescue fell lifeless to the balcony floor. He was apparently dead while standing against the wall with the wire in his hand. Whether he took hold of the wire to steady himself when intending to reach down to loosen the lower corner of the banner, or how or why he took hold of it, does not appear. He was simply seen grasping it, fastened to it. The upper corner of the banner had been loosed by him. His administrator brought an action against the company to recover damages for his death, and by the verdict of a jury recovered $7,500, on which judgement was rendered. The company brings the case here, assigning forty-three errors.

Complaint is made that the second count states the duty resting on the defendant as too high and stringent. That is mere allegation of law, and immaterial. Pleadings should state facts not law. Facts only are necessary to be stated, not arguments and influences. Where a decelaration, after stating facts, alleges that it thereupon became the duty, &c the allegation is to be understood as a mere legal liability supposed to result from the facts, and as an assertion that the defendant became bound in law to a legal liability, and not as a substantive allegation. The allegation of duty is superfluous where the facts show a legal liability, and is useless where they do not. 1 Chitty, Plead. 236; 2 *Id.* 476. It is not claimed that the facts stated in this count do not raise a duty. The matter complained of is surplusage. It would not vary or prescribe the proof. "It is only necessary to state facts, and never is it necessary to aver matters of law in a declaration."

"Surplusage never vitiates a declaration, and is treated as if it had never been inserted therein." Hogg's Plead. & Forms, 59; Andrews' Stephen's Plead. 411.

The defendant complains of the following instructions given for the plaintiff: "The court instructs the jury that it was the duty of the defendant to not only protect any portion or portions of its wires in close proximity to the north end of the balcony mentioned in evidence that may be exposed, by proper insulation, so that persons coming in contact therewith in the per-

formance of their work would not be injured, but it was also the duty of the defendant, by proper inspection from time to time, to see that said insulation was kept in a proper condition."

It is said that this instruction takes for granted that the wire was exposed and not properly insulated. I do not think so. It simply states a legal proposition, and does not intimate an opinion on the facts. Other instructions told the jury that it must pass on those facts on the evidence.

It is further argued that the instruction misleads. It is claimed that it should have incorporated the principles of instruction 12 in *Snyder* v. *Wheeling Electrical Co.* 43 W. Va. 672, that it should have submitted the question whether the defendant was bound to anticipate injury to any one from the position of the wire, or that persons would come in contact with it in performing any work. As we said in the Snyder case, an electrical company, using a dangerous power, is required to use very great care and diligence to avoid danger. It is bound to anticipate danger and properly insulate its wires, and inspect and keep them so, at certain places, but not everywhere. It is bound to expect certain accidents in certain ways or from certain causes, but not all accidents from every cause. Whether a place is such, under the evidence, as to require insulation is generally a question for the jury. Whether, if such a place, the accident is such that might have been anticipated, is a question of fact for the jury. But sometimes negligence is a question of law for the court. "Where there is no controversy in regard to the facts or inferences that may be fairly drawn from them, the question of negligence is one of law for the court." *Woolwine* v. *C. & O. R. Co.*, 36 W. Va. 329; *Johnson* v. *Railroad Co.*, 25 *Id.* 570; *Ketterman* v. *Railroad Co.*, 48 *Id.* 606. It is undisputed that the balcony was for persons to go upon, and that they did go upon it, and that the wire was distant only twenty inches from its railing and was thus in close proximity to the balcony.

"A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the utmost care

to maintain them in this condition at such places." Joyce on Electric Law, section 445; 1 Thompson on Negligence, section 800.

Persons on the balcony might thoughtlessly lean over or stretch out the arm and come in contact with the wire. A workman repairing the balcony or painting it, or hanging show banners on it or removing them from it, might come in contact with it. These considerations tell us that the court did not err in telling the jury in this instruction that insulation was, at this balcony, a duty imposed by law upon the defendant. It took from the jury only one question, that is, whether the defendant was under duty, at the balcony, to insulate its wires, and inspect them and keep them insulated. It does not intimate that the defendant was bound to anticipate the particular accident. It is argued that the instruction implies that the defendant must anticipate accident. It does not do this. I think that where the place is one that demands insulation of wires, there the company is held to anticipate contact with the wires; for it is the fact that persons may there come into such contact that imposes the duty of the insulation. When injury to a person is received at such a place from want of proper insulation, the company using the wires is *prima facie* liable, unless there be contribitory negligence. It is a clear duty to insulate in such places. *Brown* v. *Edison,* 78 Am. St. R. 442; *Perham* v. *Portland Co.,* 72 *Id.* 730; *Clements* v. *Lonsigna Co.* 32 *Id.* 348; *Snyder* v. *Elec. Co.,* 43 W. Va. 661; *W. U. Co.* v. *State,* 51 Am. St. R. 464.

It is true that sometimes, I may say generally, one is only bound to anticipate such combination of circumtances and accidents and injuries as he may reasonably forecast as likely to happen, taking into account his own past experience and the practice of others in similar circumstances, together with what is inherently probable in the condition of the instrument (the wires in this case) as it relates to the conduct of the business. So we said in *Snyder* v. *Electrical Co.* 43 W. Va. p. 672. But where law requires a particular precaution for safety, and if damage flow from its omission, makes it a cause of liability, the above rule does not apply. In other words, the law demands insulation, and if damages arise from its want, the law gives action for its omission.

Therefore, when the defendant failed to insulate, it was bound

to anticipate accident from that failure. It must foresee that it is likely to happen. The accident is the result of the neglect—the probable from it. These views sustain the court in giving plaintiff's instruction 1, and refusing defendant's 14 and 15. The former says that though the defendant did fail to insulate and inspect, yet that if injury by contact with the wire under the circumstances of the case was not, and could not be, foreseen by an ordinarily prudent and careful man as reasonably likely to flow from failure to insulate and inspect, then the injury was not the proximate cause of such failure, and the jury should find for the defendant. The other instruction is substantially the same. Notice in instruction 12 in the Snyder case the words "together with what is inherently probable in the condition of the wires as they relate to the conduct of its business. " Even under this the defendant would, in this case, be bound to anticipate accident. Would it not, in the conduct of its business, be bound to look for accident from known defect of wires, from an omission of a plain duty imposed upon it by law?

The plaintiff's instruction 2 is contested.

"The court instructs the jury that if they believe from the evidence that Earl Thomas was attempting to release the banner on the north side of the balcony mentioned in evidence and leaned over the balcony in such a way that he was brought in close proximity to the wire of the defendant, and that by some accident his hand came in contact with said wire, and that said wire at the point of contact was improperly insulated, and that he thereby received from said wire the shock of electricity which caused his death, and further believe that he received such shock of electricity by reason of the failure of the defendant to properly insulate its wires at the point where Earl Thomas came in contact therewith, then the jury should find a verdict for the plaintiff."

It is said there was no evidence that by accident the hand of Thomas came in touch with the wire. Whether he purposely did so, or his hand unintentionally came in contact, or whether he did so to steady himself, or to save himself from falling, were questions for the jury on the evidence. It is said that it took from the jury the question whether he received his death from *the* shock of electricity, instead of *a* shock. This is too refined a criticism. The words "if they believe from the evidence" ap-

plies to this cause, and left it to the jury to say whether death came from the shock of electricity.

Instruction 3 seems proper. "The court instructs the jury that if they believe from the evidence that one of the wires of the defendant in close proximity to the north end of the balcony mentioned in evidence was not properly insulated, and that Earl Thomas was attempting to release the banner on the north end of said balcony and leaned over said balcony and without negligence on his part was thereby brought in contact with said wire where it was improperly insulated, and by reason of such contact received a shock of electricity from said wire which caused his death, then the jury should find a verdict for the plaintiff."

Instruction 4: "The court instructs the jury that even if they believe from the evidence that Earl Thomas knew of the presence of the wire of the defendant company near the balcony mentioned in evidence, and further believe that when in the act of releasing or attempting to release the banner on the north end of said balcony he was brought in such close proximity to such wire that he took hold of the same to support himself, this fact will not excuse the defendant from liability if the jury believe from the evidence that Earl Thomas, did not know that it was dangerous to touch said wire and that he, in taking hold of said wire received such a shock of electricity by coming in contact therewith that his death was caused thereby; and provided further that the jury believe such shock was caused by defective or improper insulation of said wire at the point where Thomas came in contact with it."

It is said there was no evidence going to show that Thomas took hold of the wire to support himself, and there was no need for him doing so, the rail of the balcony being in front of him, and he would not seize a wire 30 inches away. Now, the jury had from evidence and the nature and circumstatnces to say how Thomas came to take hold of the wire, to form a conclusion upon that question, by inference from the circumstances, and this objection cannot be held good. It is also said that the jury could not find that he did not know it was dangerous to take hold of the wire, he having had experience in working with electric wires. If a wire is insulated there is little or no danger in taking hold of it, as all persons of experience know. Hence the courts have said that as it may be presumed that in places

where there should be, there is such insulation, a person is not guilty of contributory negligence in taking hold of one, if the person do not know of defective insulation. It was dark at the time of the occurence. *Griffin* v. *United Elec. Co.* 164 Mass. 492; (49 Am. St. R. 477); *Clements* v. *La. Elec. L. Co.,* 32 *Id.* 348; *Brown* v. *Elec. Co,* 78 *Id.* 442; Joyce on Electric Law, section 445 It is said the last part of the instruction does not tell the jury that it must find from the evidence as to insulation. The instruction opens with the requirement that they find facts from evidence, not from guess; such is the purport of the instruction. Can we surmise that the jury did not know this?

Plaintiff's instruction 5: "The court instructs the jury that if they find for the plaintiff they shall assess such damage as they think fair and just, not exceeding ten thousand dollars."

This is in the language of section 6, chapter 103, Code. Certainly there can be no error in an instruction in the words of the law. It seems to be urged that the instruction should not have been given in this form, but that the court should have instructed that the jury must give only compensative damages for pecuniary loss, and not for solace or consolation to the father, who gets the recovery as sole distributee, and it does not appear that the deceased contributed to the father's support. In connection with the instruction it is urged that the construction given this statute in *Turner* v. *Railroad,* 40 W. Va. 675, and *Sample* v. *Light* 50 *Id.* 474, is not the proper construction. Those cases hold that in actions for death under the statute no damages found by the jury can be deemed excessive to set aside the verdict, its determination being absolute and exclusive as to what amount is fair and just, unless the verdict evinces, passion, prejudice, partiality or corruption in the jury. Authorities are cited from other states to show that in them the statute only contemplates actual, pecuniary loss. The construction given a statute similar to ours in two Virginia cases cited by Judge Dent in the *Turner Case* agree with that case. As shown in the Virginia cases and by Judge Snyder in *Searles* v. *Railroad Co.* 32 W. Va. 377, our statute differs from the English act and the acts of other states in that those acts give damages for "pecuniary injuries resulting", whereas our statute omits those words limiting recovery to compensation for "pecuniary injuries", and says that "in every such action the jury may give

such damages as they shall deem fair and just, not exceeding ten thousand dollars." Observe, the statute is broad. It says "whenever the death of a person shall be caused by a wrongful act, neglect or default, * * * * the person who, or the corporation which, * * * shall be liable." It applies to persons and corporations, making them equally liable, and the power given the jury applies to both. There is no discrimination. We are cited to *Rickett* v. *Ches. & O. R. Co.* 33 W. Va. 433, holding that corporations are not liable to puniative damages for wrongs, but only compensatory damages, even where the act is wanton, willful and malicious on the part of those acting for the corporation, unless the act is expressly or impliedly authorized or ratified by it. Such seems to be the better rule, though there are cases to the contrary. *Lake Shore Co.* v. *Prentice,* 47 U. S. 101; *Spellman* v. *Richmond R. Co.,* 28 Am. St. R. 858, 876; *Warner* v. *Southern Pacific Co.,* 54 *Id.* 327; *B. & O. R. Co.* v. *Barger,* 45 *Id.* 319 and note; 1 Sedgw. on Dam. section 380. This is because corporations act only through agents, and are held to be incapable of malice and wantonness. Many cases, however, hold that as they act only by agents, if not held as individuals for their acts, they would enjoy an immunity above others by that rule, and might do great wrong without the ability in courts to deter others by making an example of them . However, the legislature has power to subject them to punitive damages, and we think that it has done so in this act. It is an exception to the general rule. Moreover, the jury in this case was not confined to damages at once ensuing to the father of Thomas. It could include probably pecuniary damages that might ensue in future; for the father was a working man, and might come to great age and want, might be a paralytic. So, we cannot say this verdict is clearly punitive for smart money. *Searles* v. *Railway Co.,* on p. 377 of 32 W. Va. We cannot overrule the *Turner Case.* We regard it sound law under the statute.

But it is said that even under that case we ought to set aside the verdict, because its amount shows it to be the child of passion, prejudice, or partiality. It may be a hard, severe verdict in amount; but if the jury has almost unlimited discretion we hardly see our way to interfere. There is nothing *dehors* the record to show such passion, nothing but the circumstances of the case, and

the case being one of death, we do not see our way, in view of the power of the jury under the *Turner Case,* to set aside its actions. That would seem generally to render the meaning given the statute in these cases nugatory. Rare must be the cases where the court can interfere for passion, prejudice, or partiality. The power of juries under this statute being so wide, it is not improper to address to them the admonition to be cautious, fair, just and reasonable in fixing damages.

Exception is made to the action of the court in refusing instructions asked by the defendant. It asked 22, and was granted 10. A number of those refused presented the theory of contributory negligence by Thomas as a defense. In the first place, the court gave four instructions fairly and sufficiently presenting this defense, and others touching it were merely repetitive. In the next place, contributory negligence was not admissible really in the case; at any rate, upon writ of error we can see that we ought not to reverse on that ground, because it was not an adequate defense, and if the jury had found for it, the verdict would have been wrong. The evidence clearly shows, even the evidence of the defense, that the defendant left the wire uninsulated, and the original insulation had become old and dangerous. Thomas was at work on the balcony removing banners put there by consent of the lessee of the theatre to advertise a show exhibiting in the opera house, and thus Thomas was there of right. He did not know of the defective insulation. It was dark, between 7 and 8 o'clock in a November night. There was some light in the street and a little light at the theatre window, not its main entrance, not enough to detect the bad insulation. Thomas had some experience with electric wires; but that told him that wires were usually covered and safe, and under law given above he had a right so to assume. Add to this decisions of courts that to touch a wire, ignorant of defective insulation, is not negligence. How, then, can we attribute negligence to Thomas to atone for the gross, long continued neglect of a company at this public place to use the ordinary care of protecting the wire? One touching a wire where the insulating material is worn off is not guilty of contributory negligence if he did not know its condition. *Griffen* v. *United Elec. Co.,* 49 Am. St. R. 477, (32 L. R. A. 400). One taking hold of an electric wire badly insulated, ignorant of it, not denied recovery. *Giraudi* v.

*Elec. Co.,* 48 Am. St. R. 114. Contributory negligence is not imputed to one who fails to look out for danger when there is no reason on his part to apprehend it. Every one has a right to presume that another, owing a special duty to guard against danger, has performed it. *Engle* v. *Smith,* 21 Am. St. R. 549. I consider this law sound and very apt in this case. "One coming in contact with an electric wire in the necessary discharge of duty will not on that account be guilty of contributory negligence, if it was the duty of the corporation owning such wire to keep it insulated, and it has neglected this duty, and there was nothing in the appearance of the wire to indicate to the person injured such neglect, though he had been cautioned to be careful of the wires and to keep away from them." *Clements* v. *La. Elec. L. Co.,* 32 Am. St. R. 348.

"Nor will contributory negligence be ascribed to an innocent person, because he failed to suspect that a corporation exposing dangerous wires on a side of a building, would neglect properly to insulate them." 1 Thompson on Negligence, sections 190, 800. This is a very late and fine work of high authority on an important subject. "In many situations a man is justified in law in acting on the presumption that other men have acted lawfully, rightly, carefully and properly until he is in some way admonished to the contrary. For example a workman employed to load, ride on and unload an elevator is not necessarily negligent in assuming that the elevator is safe." 1 Thompson on Negligence, section 190. Of course, under these principles there is no error in refusing an instruction requiring the jury to find for the defendant.

The defendant makes many exceptions to the refusal to allow certain questions to be answered, some of which seem not to be much relied upon. Seeing that there was a very full presentation of both sides in the evidence to the jury, and as the case is not to be retried and they involve no importance or new principles, we shall not discuss them to any extent. It is complained that the court ought not to have allowed Feinler, Richardson and Wilson to testify that they knew of no inspection of the wires by the company. They were about the building, had opportunity for investigation. It was proper to go to the jury for what it was worth.

It is complained that the court would not allow questions to be

answered as to whether banners had not previously been often safely put on and taken from the balcony. I do not see that this is admissable. Certainly not sufficient in materialty for reversal. It only tends to show negligence in Thomas, and as we have seen that defense cannot prevail. In fact evidence to prove this was before the jury. As to many questions we may guess the expected answer, and what was intended to be proven, but it is not shown. Unless a question necessarily imports an answer, we must be told what it was proposed to prove, else we cannot say that the witness could give any answer, or what answer would have come, and cannot tell of its materiality. We could not be asked to reverse under such circumstances. *Jackson* v. *Hough*, 38 W. Va. 236; *Greever* v. *Bank* 99 Va. 547. The question specified in assignment 15 was answered and the answer was not excluded. This objection applies to assignments 10, 11, 12, 16, 17, 18, 19, 20, 21, 22, 23, 24. But I may remark, as to the claim that some of the questions aimed likely to show that the damage came from the wire of another company, that the evidence is clear and unanswerable that Thomas was seen with his hand on defendant's wire, and that this killed him, as he was leaning against the wall just there, and when he was pulled away dropped dead, and the defendant's wire was incontestably bad. What else could have killed him?

Such proposed evidence would have been without force before the jury, and its rejection is without materiality on writ of error. We can see this plainly. The theory, too, that deceased might have been injured by having a stick, ironed at ends, and thus produced the injury, is utterly without force.

For these reasons, with some reluctance as to the amount of the judgment, we affirm it.

*Affirmed.*