## Lancaster Electric Light Company v. Taylor.

(Decided January 28, 1916.)

### Appeal from Garrard Circuit Court.

1. Negligence—Trespassers.—A member of a traveling comedy company who climbs on a wagon loaded with the effects of the company to assist in removing some obstruction with which the load has come in contact is not a trespasser or a volunteer, there being evidence to the effect that it was a part of his duty to assist in loading the effects of the company.

2. Electricity.—While electric wires charged with a voltage of only 210 to 220, may not be deadly under ordinary conditions, they are dangerous.

3. Pleading—Cured by Verdict.—When an issue is attempted to be made by a pleading, but by reason of some omission or imperfection therein, either of substance or form, it would not stand the test of a demurrer, yet if no demurrer is filed and the issue is treated throughout the trial as having been properly made, the verdict will cure the defect; but where there is no issue, and an absence of an effort to make an issue, the verdict will not be deemed to have supplied the omitted pleading.

4. Judgment—Nunc Pro Tunc Order.—A nunc pro tunc order may not be entered after the expiration of a term based upon mere affidavits of what occurred at the trial; such an order may be entered only where there is some record evidence upon which to base it.

5. Judgment—Non-Obstante Veredicto.—Where a party asks for a peremptory instruction, to which he is entitled but which is not given, he is not thereafter entitled to a judgment notwithstanding the verdict.

LEWIS L. WALKER and HAZELRIGG & HAZELRIGG for appellant.

O'REAR & WILLIAMS, J. E. ROBINSON and G. C. WALKER for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

There is in the city of Lancaster a lot adjoining or near the public school which was rented in 1914 and prior thereto by the school authorities as a playground for the students. The owner, however, reserved the right to rent the same for street fairs, tent shows and other such amusements.

In the early summer of 1914 the owner rented the lot to a street fair company, and at the request of the management appellant's electric wires were run on the lot so that the street fair people might have the benefit of the electric lights in their exhibitions. The wires and poles remained on the lot after the street fair and were probably used thereafter by some other amusement company which exhibited there.

During the week ending July 18, 1914, the Williams Comedy Company rented the lot and gave nightly exhibitions under a tent erected thereon by the company, but used their own lights and did not use the electric lights, although the electric wires still remained thereon.

Appellee was an actor in the Williams Comedy Company, and on Saturday night, July 18, after the performance the tent was being dismantled and the paraphernalia loaded on wagons to be hauled to the station for shipment to another point. Appellee's written contract of employment with the company did not impose upon him any duty with reference to the loading of the company's effects upon removal from one place to another, although he testifies that it was expected of him and that he sometimes did so.

Some time after the performance on the night in question, although appellee had not finished packing his personal effects and belongings, he and another employe of the company walked down from the lot to a restaurant in the town and had a lunch, and when they left there was standing in the tent a wagon with horses to it to be loaded with some of the belongings of the company to be hauled to the station for shipment. When they returned a short time later the wagon had been loaded and driven out of the tent and had proceeded a short way on its road to the station, but still in the lot, when some of the benches belonging to the company which had been piled up high on the wagon came in contact with the electric wires which had been so run on the lot, and the wagon was halted. Appellee and his companion

immediately went up to where the wagon was, and he, without inquiry from anyone, or suggestion from anybody, and without knowing what the difficulty was or the cause of the trouble, as he states, except that the load had come in contact with something, immediately jumped upon the wagon and came in contact with the wires, was thrown from the wagon and his leg broken.

A local liveryman had the contract with the company to haul the goods from the lot to the railroad station and the wagon was at the time of the accident being driven by his employe.

This is an action by Taylor against appellant to recover for the injury so received, the negligence alleged being that the wires were strung too near to the ground for safety and that they were not properly insulated.

The answer denied the material averments of the petition, and in a separate paragraph pleaded contributory negligence.

On the trial appellee recovered a verdict and judgment for $2,000.00, and from that this appeal is prosecuted.

The appellant insists that it was entitled to a peremptory instruction.

(1) Because the plaintiff was a trespasser or volunteer on the wagon at the time of the accident.

(2) Because the evidence showed the wires in which he came in contact were not dangerous.

(3) Because it stood admitted in the pleadings that appellee was guilty of contributory negligence.

That appellee was not a trespasser on the ground is too apparent for discussion; the company of which he was a member had the lot rented, and he being one of its employes not only had the unquestioned right to be there, but from the evidence it is quite apparent it was his duty to be there.

Whether he was a mere volunteer or trespasser when he climbed upon the wagon presents, however, a different question. There was a conflict in the evidence as to whether it was any part of the plaintiff's duty, under his contract of employment, to aid in the loading of the paraphernalia of the company upon its removal from one point to another. His written contract of employment imposes no such duty upon him, but his own evidence and that of another connected with the comedy company, shows that he was expected to give such aid

when the company was so moving. This question was submitted to the jury in the instructions given by the court, and they were required to believe before they could find a verdict for the plaintiff that he was at the time of the accident engaged in the line of his duty.

The court likewise submitted to the jury the question of fact whether the electric wires, charged as they were, were at the time dangerous. The evidence on this point was that the wires were only charged with a voltage of from 210 to 220, and that such voltage would not produce the death of a man under ordinary conditions. On the other hand it was shown conclusively that the shock caused by the plaintiff's contact with the wires knocked him from the wagon and directly brought about his injury, and although it may be that electric wires only charged with such voltage were not deadly, it is apparent from the physical facts in this case that they are certainly dangerous. While such a charge of electricity might not cause death it is easy to see how it might bring about serious injury. It might cause such a shock as to wreck ones whole nervous system, or it might throw or hurl him against some object which would result in maiming or injuring him for life. Manifestly such a charge of electricity is dangerous.

After the verdict the defendant entered a motion for a judgment notwithstanding the verdict, and is now insisting that that should have been sustained because the affirmative plea of contributory negligence in the answer was uncontroverted.

Section 386 of the Civil Code provides:

"Judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him," and it is the contention of appellant that inasmuch as its affirmative plea of contributory negligence stood confessed, the court should have sustained both the request for a directed verdict and the motion for a judgment notwithstanding the verdict.

Appellee, however, argues that as evidence was taken by both parties on this issue, and it was treated throughout the trial as one of the issues, and as the court instructed upon it, and as the defendant requested the giving of an instruction on this subject, that the verdict should be treated as having cured this defect.

But such is not the rule; it is true that when an issue is attempted to be made by the pleadings, but by reason

of some omission or imperfection therein, either of substance or form, it would not have stood the test of a demurrer, yet when no such demurrer is filed and the trial proceeds and the issue is treated by the parties as having been properly made throughout the trial, the verdict will cure the defect; but where there is no issue and there is an absence of an effort to make an issue, the verdict will not be deemed to have supplied the omitted pleading.

As said by this court in the case of Drake v. Semonin, 82 Ky., 294:.

"Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been fatal on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict."

And in the same case the court, after quoting from the rule laid down in Wilson & Hunt, 6 B. M., 379, says further:

"The better rule, and in fact the one recognized by all the elementary authorities on the subject of pleading, including Mr. Chitty, is that where there is a total omission to state a cause of action, or some fact essential to the cause of action has been *wholly omitted*, the verdict will not cure the defect."

In Hill v. Ragland, 114 Ky., 209, the rule laid down in the above case was referred to and approved, and the authorities fully discussed.

Defendant having been entitled to a directed verdict it was not thereafter entitled to have its motion for a judgment notwithstanding the verdict sustained. Com. Fire Ins. Co. v. Moore, 154 Ky., 18; Mast, Crowell & Kirkpatrick v. Schumann, 100 Ky., 464; Lou. Ry. Co. v. Hibbett, 139 Ky., 43.

After the transcript was filed in this court, and at a special term of the Garrard circuit court, on the 10th day of April, 1915, that court entered a *nunc pro tunc* order traversing on the record the affirmative allegations in the defendant's answer, to have the same effect as if done on the trial of this case, and that order is filed in this court in a supplementary record.

That record shows that the last named action of the Garrard circuit court at its special term was based wholly upon the affidavits of attorneys who tried the case, and there is no claim that there was on the records of that court any order or memorandum of any kind or description on which to base the *nunc pro tunc* order.

Such orders are frequently made, but it is the rule that there must be some record evidence upon which to base them, and that they may not be entered after the expiration of the term upon the mere recollection of men. To say that records may be corrected or supplemented, added to or taken from, when the only basis of such action is uncertain human recollection, would be to destroy their value as record evidence, and would lessen, if not destroy, the faith of the public in the verity and permanence of public records.

This court in the case of Montgomery v. Viers, 130 Ky., 701, in discussing the propriety of entering a *nunc pro tunc* judgment, after an extended review of the whole subject, said:

"The entry of such judgments are always to protect some right that has arisen since the judgment was delivered, as otherwise a judgment now would be as efficacious as if entered then. For that reason, and to that end, in pursuance of the maxims just quoted, the courts will enter a judgment which was in fact rendered, but which through the omission of the clerk, or other casualty, has not been recorded; but, before proceeding to order such judgment entered as of the date of its rendition, strict evidence is required that it was then so rendered. Therefore the rule is that such judgment can be entered only upon evidence of the fact of its rendition contained in the record itself."

The same doctrine has since been upheld and adopted by this court in Ralls v. Sharp, 140 Ky., 744.

We conclude therefore that the entry of the *nunc pro tunc* order was unauthorized and cannot be given the effect now claimed for it, and that the court should have on the trial sustained the motion for a directed verdict.

However, the plaintiff may upon the return of the case amend his pleadings.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.