646

THOMAS, Respondent, vs. WISCONSIN POWER & LIGHT COMPANY, Appellant.

*December 6, 1933—January 9, 1934.*

For the appellant there was a brief by *Schubring, Ryan & Petersen* of Madison, and oral argument by *Wm. Ryan.*

For the respondent there was a brief by *Stephens, Sletteland & Sutherland,* attorneys, and *A. E. Kilmer,* of counsel, all of Madison, and oral argument by *Robert J. Sutherland.*

ROSENBERRY, C. J. The defendant contends here that no negligence was proven against it, it being conceded that it had in all respects complied with the orders of the Industrial Commission with respect to the erection and maintenance of the high-voltage line in question, and second, that the plaintiff's injuries were caused by the negligence of the house movers in continuing their operations at a time when they knew that the moving house might through swaying come within the danger zone and so be brought in contact with the high-tension wire.

A determination of these questions requires a brief statement of the facts. One Batchelor had engaged Quick & James to move a house located on Fourth street in Mineral Point to a farm in the country. The house was to be moved west on Fourth street to State street, then south on State street one block to Fifth street, thence westerly on Fifth street to a point without the city limits. To facilitate the moving, dollies were placed under the house and tractors were used to furnish the motive power. An arrangement was made by Quick & James with respect to opening defendant's lines so as to permit the passage of the house, which was from twenty-seven to thirty feet high. Defendant's employees took down wires at the corner of Fourth and State

streets. They also took down wires at the corner of State and Fifth streets. It was a cloudy, rainy, misty afternoon, it being the 11th day of November. The actual operations were in charge of one Francis White, who acted as foreman and gave the orders in accordance with which the tractors moved. The defendant company had a high-tension line on Fifth street which it had maintained there for some sixteen or seventeen years. There were two lines on the poles on Fifth street, one which carried 33,000 volts and the other 2,200 volts. The 33,000 volt line was at the top of the pole and consisted of three wires. The 2,200 volt line also consisted of three wires. It is undisputed that the plaintiff knew that there was a high-tension line along Fifth street and knew that a high-tension wire was one which carried current under high voltage. It is undisputed that the poles bore the sign "Danger—High Voltage" and that the signs were plainly to be seen upon every pole.

November 11th, being Armistice Day, was a holiday. An arrangement had been made between Quick & James and the defendant company through its agents to open the lines. In order to shut off the high-tension line it was necessary for the defendant to have current supplied to communities to the west from Galena, Illinois. It being a holiday, some difficulty was anticipated in starting the plant at Galena. White, the foreman, and Quick & James were informed that to do that would cost $20 extra under the circumstances, that is, over and above the $30 or $35 agreed upon. At the time of the accident, both Quick and James were away, the plaintiff was working on the north side of the house, the Fifth street high-tension line being on the south side of the street away from the side on which the plaintiff was working. As the building moved, it swayed and in swaying came either in contact with the high-tension line or near enough to it so that electric current was communicated to it. This ran down a spout, the current passing

through the plaintiff, as a result of which he sustained severe injuries.

It is conceded that the defendant had nothing to do with respect to controlling the movements of the house movers. It does appear, however, as a fact that one Lee, an employee of the defendant, repeatedly warned White, who was in charge of the operation as foreman, that it was dangerous to continue operations, the ground was uneven, the house when moving was noticed to sway, and he was fearful that continued operations would result in contact, directly or indirectly with the high-tension line. The theory of the plaintiff appears to be that Quick & James had entered into a contract by which the defendant company, was to insure the safety of the operation. It is considered that the evidence fails to establish such a contract and, should it have been established, the power or authority of defendant's agents to enter into such an arrangement does not appear. Such an agreement would amount to a contract to insure the safety of an operation over which the defendant company had no control. It does appear that defendant's agents had agreed to open the line and in doing so of course they were obliged to exercise care for the safety of persons in the vicinity. If they failed to open the line, they might be liable in damages for failure to perform their contract. Every one knew that the high-tension line was on Fifth street and that it was not cut and that it was what is called live or loaded. It does appear that plaintiff was not aware of the precise nature of the risk which he ran in working about the building under such circumstances, but he did know in a general way that it was dangerous for anything to come in contact with a high-tension line.

It seems too plain for argument that under such circumstances the cause of plaintiff's injuries was the continuance of the house-moving operation. An entirely different question would be presented if the defendant had been negligent

in opening its lines. The line having been constructed in all respects in accordance with the orders of the Industrial Commission, warning of its presence having been given in compliance with such orders, the defendant was guilty of no negligence in maintaining its line. In this case it did nothing else. Every one knew that the high line was not opened. The defendant was under no obligation to open its line except by virtue of its agreement and as to that all parties knew that there had been no attempt made to open it or deaden it. Every one had all the warning that the defendant could give. The act of the house movers in bringing the building into contact with the power line created the hazard. The failure to warn was a duty resting under the circumstances of this case not upon the defendant or its agents and servants, but upon those who created the hazard as a result of which the plaintiff sustained his injuries. The defendant company had no power to restrain the house movers from continuing their operations. It had asked the foreman to desist, had in fact warned the foreman of the danger and had discharged every duty imposed upon it by law. The fact that it had not performed a contract when its failure to perform was known to every one did not make it negligent. When the defendant company had fully complied with the orders of the Industrial Commission with respect to the erection and maintenance of its lines, the acts of a third person could not impose upon it a duty to open or deaden its line whenever the act of such third party created an obvious hazard. There was nothing hidden, secret, or undisclosed in the situation. The peril was open and apparent. The thing that caused the plaintiff's injury was the movement of the house within the danger zone. That was a peril created by the house movers. The defendant was not under a duty at its peril to ascertain what the house movers proposed to do and then do whatever was necessary to avoid danger to third persons. No relation of employer and em-

ployee or master and servant existed between the defendant and the plaintiff. The house movers were not independent contractors acting for the defendant. No one connected with the moving of the house was doing anything which concerned the operations of the defendant. The hazards of that operation were to be guarded against by those who created the situation, the defendant's lines being lawfully in the street and erected in compliance with the provisions of law. While the plaintiff suffered most serious and irritating injuries, we can reach no other conclusion than that the cause of the injuries was the conduct of his employers and not that of the defendant.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.