## SMITH v. APPALACHIAN ELECTRIC POWER CO.

No. 3734.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

648

George Poffenbarger, of Charleston, W. Va. (A. A. Lilly, L. F. Poffenbarger, and

Poffenbarger & Poffenbarger, all of Charleston, W. Va., on the brief), for appellant.

Fred O. Blue, of Charleston, W. Va. (Charles M. Love, J. E. Campbell, and Blue, Dayton & Campbell, all of Charleston, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Paul A. Smith, herein referred to as plaintiff, was severely burned by indirect contact with a high-voltage electric wire owned and operated by the Appalachian Electric Power Company, and brought suit against the company, herein referred to as defendant, to recover damages in the amount of $150,000. The suit, brought originally in the circuit court of Kanawha county, W. Va., was removed to the District Court because of diversity of citizenship and was there tried. At the conclusion of all the evidence, the District Judge directed a verdict in the defendant's favor upon the ground that no actionable negligence had been proved, and that the injury was attributable to negligence on the part of the plaintiff. The serious question here presented is whether under the evidence, which was practically undisputed, the case was properly withdrawn from the jury.

The accident occurred on the 4-H Fairgrounds in Kanawha county, W. Va., on September 21, 1933, the day after the annual fair had closed. One Latlip operated at the fair two Ferris wheels of which plaintiff was foreman, and it was in dismantling one of these wheels that he was injured. The wheel had been erected by plaintiff, under the direction of one Mc-Coy, Latlip's superintendent, at a point extremely close to a pole of the defendant, carrying two electric wires which supplied the fairgrounds with light and power. The wire on the side near the Ferris wheel carried 2,300 volts. A wire connecting this main wire with a transformer on the pole ran down from the upper cross-arm of the pole to another cross-arm about 5 feet below; and at the time of the accident about 18 inches of this vertical wire, immediately above the lower cross-arm, was covered only by ordinary weather insulation, insufficient to prevent transmission of current to grounded conductors coming into contact with it. The Ferris wheel, which was 40 feet high and about 11 feet higher than the pole, stood at right angles to the cross-

arms, with its axle about 13 feet to one side of the pole, and was so placed that one side of it was less than 24 inches from the unprotected wire above mentioned.

The Ferris wheel was operated by means of an endless steel cable, extending around the circumference of the wheel on grooved wooden shoes or rims, fastened at the end of each spoke, on the side next to the pole and wire. At the time of the accident, plaintiff and two other men were engaged in removing this cable from the wheel. In the accustomed way, they detached it from a bull wheel driven by a gasoline engine, thus getting some slack; and, while one of the men turned the Ferris wheel slowly around, plaintiff and another stood at each end of the wheel, and on the ascending end directed the cable out of the wooden rims and to the side, so that, after the wheel had made about half a revolution, the cable, then remaining in the rims at only a few points, would drop off. The cable fell off as expected, but, because of the small space between the wheel and the cross-arms of the pole, it became lodged on the lower cross-arm, in contact with the unprotected wire at that point. There were immediate flashes of electricity, and plaintiff, who was holding the cable in his hand and passing the slack on to the other man, was at once stunned. He fell and lay prone for some minutes with the cable across his body, and his clothing caught fire. There was no means of switching off the current in the immediate vicinity, and plaintiff remained in contact with the cable until a bystander knocked it away with a pole.

The position taken by the defendant is, in brief, that the 2,300-volt wire was entirely safe, though protected only by ordinary weather insulation, when it was originally installed; that the dangerous situation, if any, was caused wholly by the subsequent erection of the Ferris wheel near the wire; and that defendant was under no duty to remedy that situation, caused by the plaintiff himself or his employer. A number of circumstances bearing upon the issue of negligence may now be reviewed in the light of this contention.

The Ferris wheels had been set up in the same location for at least four years prior to 1933, but, in previous years, the wire running to the same pole had carried only 110 or 220 volts. The lighting had been unsatisfactory during this period, and, on complaint of the fair association, higher voltage was put in at various points. The new wire on the pole where the accident occurred was installed on the same day when the Ferris wheel arrived on the grounds. The other Ferris wheel which has been referred to was then being erected at a distance of about 25 feet from the pole. According to evidence on behalf of the plaintiff, part of the wheel here involved was brought to the fairgrounds, and the base of it was laid out on the intended location, at a time when some of the defendant's employees were still at the pole, completing work on the transformer. And the men in charge of installing the new wire concededly became aware of the danger within a day or so after the Ferris wheel was erected. At this time neither the wire coming on to the pole, nor the vertical wire between the cross-arms, was protected by more than weather insulation, and it would have been possible for passengers on the wheel to reach out and touch either of the wires with their hands. When they saw this perilous situation, the defendant's employees told McCoy, the superintendent, that the wire was dangerous and, according to their evidence, instructed him to move the wheel farther away from the pole. McCoy refused, either because it was too much trouble or because, as he testified, there was no space available. Defendant's employees then proceeded to cover most of the wire within reach of passengers with heavy rubber hose. They put on all the hose that they had, and informed McCoy that it was then safe to operate the wheel, having in mind the safety of passengers. But the 18 inches of wire above the lower cross-arm was not covered, as has been indicated, and there was evidence that passengers could have reached it with their hands in passing by.

Electrical engineers, who qualified as experts, testified that in their opinion the exposed portion of the wire was unsafe for persons working on the wheel. Weather insulation, which is a covering of triple braided cotton treated with asphaltum, is ordinarily used and is safe for high-voltage wires that are placed out of reach; but it is unsafe when there is danger of contact. Defendant's men clearly recognized that fact, but they apparently gave no thought except to the safety of passengers riding on the wheel. It would have been possible at small cost either to change the wires so that the neutral wire would be on the side near the Ferris wheel and the primary wire on the other, or to have boxed

650

the primary wire between the cross-arms with boards; but, in any event, sufficient protection would have been afforded had all dangerous portions of the wire been covered with the rubber hose. And, even in absence of such protection, the danger to persons working on the wheel would have been materially lessened had a sign been posted to warn them of the voltage carried by the wire; but that precaution was never taken.

Defendant, as has been stated, relies upon the fact that the maintenance of wires without insulation is customary and proper when such wires are placed on high poles, out of reach so far as ordinary human activities are concerned; and it is contended that no duty devolved upon defendant to make changes for the protection of persons voluntarily placing themselves in a position of danger by the erection of temporary structures nearby. In support of this position, the case of Thomas v. Wisconsin Power & Light Co., 213 Wis. 646, 252 N. W. 192, is cited, where it was held that the company owed no duty to deaden its line to guard against the obvious hazard of moving a house in close proximity to the line, and also Buell v. Utica Gas & Electric Co., 259 N. Y. 443, 182 N. E. 77, where it was held that the company had no duty to avoid a similar danger caused by the operation of a movable crane nearby. And it is insisted that, since defendant had no duty to act, it cannot be held to have assumed an additional duty, either because its employees gave some warning of the danger and the warning was not heeded, or because affirmative action was taken for the protection of passengers, by insulating all but a small portion of the wire with rubber hose. Finally it is said that, even if a duty did rest upon the defendant, the hose insulation which it installed sufficiently provided against all dangers which could reasonably be foreseen; in short, that the dismantling of the wheel in the manner described could not reasonably be anticipated.

The contention most forcefully urged by the defendant, namely, that it owed no duty of care to employees working in and about the wheel, although well aware of the danger, does not meet with our assent. It is apparently conceded, and we think necessarily, that a different situation would have been presented, and defendant would have been subject to duty, had the Ferris wheel been erected previous to the installation of the electric wires, or at the same time. And the argument rests, in final analysis, upon an assumption that defendant acquired some prior right, by virtue of its prior occupation of the premises, which entitles it to say that the danger caused by the proximity of the Ferris wheel to its wire was brought about solely by the negligence of the proprietor of the wheel, and that defendant was immune from duty. We know of no principle of law which entitles the owner and operator of dangerous electric wires, merely by virtue of prior occupation, to insist that it may continue to maintain its wires in the same condition as if remote from human activity and threatening harm to no one, regardless of changes in the premises made by subsequent rightful occupants. On the contrary, the same contention that defendant now makes has been rejected by the courts in a number of decided cases.

In Speich v. International Ry. Co., 219 App. Div. 620, 622, 623, 221 N. Y. S. 66, plaintiff was injured by contact with defendant's defectively insulated feed wire while engaged in ascending a telephone pole of his employer, which had been placed within 4 inches of defendant's wire at a time subsequent to its installation. The court reversed a judgment of compulsory nonsuit, which had been granted on the ground that defendant owed no duty, saying, in an opinion by Presiding Justice Hubbs (219 App. Div. at page 622, 221 N. Y. S. 66, 68): "The fact that the pole was erected by the telephone company subsequent to the placing of the feed wire by the defendant did not relieve the defendant from the duty of exercising reasonable care to avoid injury to persons who might come into proximity to its wire at a place where such persons had a legal right to be. The fact that the feed wire, when erected, was not close to the pole and was properly insulated, does not establish a lack of negligence on the part of the defendant as a matter of law. It was bound to use reasonable care under the circumstances to keep the wire reasonably safe by constant oversight, inspection, repair, and replacement if necessary. * * * The fact that the telephone company might have been negligent in erecting the pole so close to the defendant's feed wire does not relieve the defendant from liability for its negligence. It is liable for the direct result of its own negligence, even though the telephone company's negligent act concurred in causing the plaintiff's injury. Sweet v. Perkins, 196 N. Y. 482,

90 N. E. 50; Hancock v. Steber, 208 App. Div. 455, 204 N. Y. S. 258."

See, also, Braun v. Buffalo General Electric Co., 200 N. Y. 484, 94 N. E. 206, 34 L. R. A. (N. S.) 1089, 140 Am. St. Rep. 645, 21 Ann. Cas. 370; Byerly v. Consolidated Light, Power & I. Co., 130 Mo. App. 593, 109 S. W. 1065; Mississippi Pow. & L. Co. v. Whitescarver (C. C. A. 5) 68 F. (2d) 928; Wilkins v. Water & Light Co., 92 Neb. 513, 138 N. W. 754, 757; City of Weatherford Water, Light & Ice Co. v. Veit (Tex. Civ. App.) 196 S. W. 986, 991, 994; Hickman v. Union E. L. & P. Co. (Mo. Sup.) 226 S. W. 570, 575; Lancaster E. L. Co. v. Taylor, 168 Ky. 179, 181 S. W. 967, Ann. Cas. 1918C, 591; Birsch v. Citizens' Elec. Co., 36 Mont. 574, 93 P. 940; City of Albany v. James, 39 Ga. App. 379, 147 S. E. 396; and compare Dansbery v. Nor. States Power Co., 188 Wis. 586, 206 N. W. 882, 884.

We are in accord with the rule applied in these decisions, and are thus of opinion that an electric power company, maintaining its wires on private property, is bound to exercise due care when other occupants, in normal and rightful use of the premises, erect structures in proximity to its lines, in the event that persons rightfully in, on, or about such structures for work, business, or pleasure, are thereby placed in a situation of danger, and the company knows, or with reasonable diligence ought to know, of the danger. It may be, as decided in Buell v. Utica Gas & Elec. Co., 259 N. Y. 443, 182 N. E. 77, upon which defendant strongly relies, that the company's duties may not be extended so far as to require it to take precautions necessitated by an extraordinary, special, and temporary use of the premises; but we have no occasion to pass upon that question at this time. We are not concerned in the pending case with a use of premises so brief and extraordinary that an unreasonable burden would be placed upon the company if it were required to safeguard persons engaged in such an undertaking. The erection and maintenance of the Ferris wheel on its allotted space in the fairground cannot be viewed as an extraordinary, special, or even as a temporary use of the premises, in a proper sense. Its maintenance there was no more temporary than the uses to which the whole fairground was put, and it had been erected in the same location in at least four prior years. An undue risk to patrons and employees was undoubtedly created by

erecting the wheel so close to the unguarded wire, but the consequence of that act was to impose upon defendant and the proprietor of the wheel a duty to provide against the danger of which they were aware.

The remaining questions do not require extended discussion. Much has been written in the decided cases concerning the perils which lurk in deadly currents of electricity and of the degree of care owed by those who control them. For the purposes of this case, it will suffice, however, to state the oft-repeated rule that one who sets in motion so destructive a force is bound to exercise a degree of care commensurate with the danger involved, at places where others have the right to be, for work, business, or pleasure, if injury to such persons is reasonably to be apprehended. Runyan v. Kanawha Water & Light Co., 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430; Thomas v. Wheeling Electrical Co., 54 W. Va. 395, 46 S. E. 217; Humphreys v. Raleigh Coal & Coke Co., 73 W. Va. 495, 80 S. E. 803, 805, L. R. A. 1916C, 1270; Griffin v. Un. Elec. L. Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; McLaughlin v. Louisville Elec. Light Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; Colusa Parrot Mining, etc., Co. v. Monahan (C. C. A. 9) 162 F. 276, 280; Memphis Consol. G. & E. Co. v. Bell (C. C. A. 6) 152 F. 677, 680. The foresight to be employed may depend in particular cases upon the voltage transmitted over the wire in question. Van Leet v. Kilmer, 252 N. Y. 454, 169 N. E. 644, 645. Under the circumstances of this case, we think it clear that the jury might properly have found that injury to employees of the wheel in working upon it or in dismantling it was reasonably to be anticipated by the defendant. It was charged with knowledge that the wheel would be dismantled at the end of the fair, within less than 2 feet of its 2,300-volt wire, and accidental contact with the wire was well within the range of apprehension.

Nor do we think that the ruling of the court below can be sustained on the ground that the plaintiff under the evidence was guilty of contributory negligence as a matter of law. It is true that he expected the cable to fall, during the process of dismantling, through the narrow space between the wheel and the wire, and if, in addition, it should be proved that the plaintiff was aware of the danger from the wire, there would be sufficient evidence to

justify the submission of the issue of contributory negligence to the jury. But we may not assume that he was aware of the danger in the face of his testimony that he did not know the voltage of the wire. His duties required him daily to go up into the wheel to oil it and to make adjustments of cables aligning the spokes, and of course he knew of the presence of the wire and of its proximity to the wheel. Some notice of the danger must have been brought home to him when he observed that the greater part of the wire near the wheel was later covered by the rubber hose; but he denied that he was aware of danger, and there is no proof that any of the employees who were warned by defendant ever imparted their knowledge to him. When it is remembered that the voltage in previous years had been but 110 or 220, we cannot say that plaintiff's testimony is inherently improbable, or that the evidence as a whole leaves no doubt of its falsity. The credibility of the testimony was therefore a question for the jury, as was the issue raised by conflicting evidence as to whether the cable was or was not "thrown" off the wheel and against the wire. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720. And if these issues should be resolved against the defendant, there would be ample warrant for a finding that plaintiff was not guilty of contributory negligence.

We have not overlooked cases such as Arkansas P. & L. Co. v. Hubbard, 181 Ark. 886, 28 S.W.(2d) 710, and Aljoe v. Penn Central L. & Pow. Co., 281 Pa. 368, 126 A. 759, cited by defendant, which adhere to the rule that all ordinary persons are in these times presumed to know that electric transmission wires are dangerous. Compare Thomas v. Wheeling Elec. Co., 54 W. Va. 395, 46 S. E. 217, 221; Ziehm v. United E. L. & Power Co., 104 Md. 48, 64 A. 61; Mississippi Power & L. Co. v. Whitescarver (C. C. A. 5) 68 F.(2d) 928. There is no need to pass upon the propriety of such a rule in the pending case, for we think it may not properly be applied under the circumstances here disclosed. Plaintiff was standing on the ground beneath the wheel, and if, as we must assume to be the fact, he believed the wire in question to carry but 110 or 220 volts, it may well be that the most serious consequence he would have been bound to anticipate was a slight shock.

Reversed.