**AMERICAN GENERAL INS. CO. et al. v. SOUTHWESTERN GAS & ELECTRIC CO.**

No. 9378.

Circuit Court of Appeals, Fifth Circuit.

Dec. 2, 1940.

C. M. Hightower, of Houston, Tex., for appellant.

George Prendergast, of Marshall, Tex., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

Julius Jesse Jones was a laborer employed by the Texas Bitulithic Company. On July 23, 1937, he was working with a drag-

line crew on the Kilgore-Carlisle Highway in Rusk County, Texas. His crew had been working about four hours placing tile in a culvert when the operator of the dragline, in attempting to place another section of tile in the culvert, swung his metal crane or boom in contact with or in close proximity to highly charged electric lines belonging to Southwestern Gas & Electric Company. When the crane made contact with the wires, a current of electricity flowed down the metal cable of the dragline and instantly killed Jones. Texas Bitulithic Company was a subscriber to the Texas Workmen's Compensation Act, and American General Insurance Company was its insurance carrier. The surviving wife and children of Jones were granted compensation under the provisions of the Workmen's Compensation Act, and American General Insurance Company assumed liability for compensation benefit payments and funeral expenses.

This suit is brought against the electric company under Section 6a of Article 8307, Revised Civil Statutes of Texas, which provides that the insurance association "shall be subrogated to the rights of the injured employe" with any excess recovered payable to the employee or his beneficiaries. This appeal is from a judgment entered on an instructed verdict in favor of the defendant, Southwestern Gas & Electric Company.

The record shows that in 1931 Southwestern Gas & Electric Company acquired a private right-of-way easement from property owners along the Kilgore-Carlisle Highway; that shortly thereafter it erected poles and strung its lines along its right-of-way and parallel to the highway. The lines carried 11,500 volts of electricity and were maintained at an elevation of 34 feet 10 inches above the ground. Electrical experts testified that an elevation of 22 feet meets the "safety goal" for such lines. Moreover, the elevation fully complied with the requirements of Article 1436, Revised Civil Statutes of Texas, which provides that such lines must be constructed and maintained at a height of at least 22 feet. The wires were uninsulated, but the expert testimony is to the effect that it is not practicable to insulate lines carrying such high voltages. Kentucky Utilities Company v. Searcy, 167 Ky. 840, 181 S.W. 662.

In 1937 the Commissioners of Rust County, Texas inaugurated an extensive road building program. The Kilgore-Carlisle Highway was one of the roads selected to be improved. Under the improvement plans for this road the electric lines of Southwestern would be taken into the new right-of-way. A conference between the County Commissioners and representatives of the electric company was held to discuss the road building program and plans. In order to accommodate the county and cooperate with it in the road building program, the electric company agreed to secure a new right of way for its lines, and survey, re-stake and move its poles and lines when notified by the County Engineer. Several days prior to July 23, 1937, the day of Jones' electrocution, the County Engineer notified the electric company that the next section he wanted cleared was a section along the Kilgore-Carlisle Highway. On July 23 a civil engineer of Southwestern Gas & Electric Company was at the location surveying and setting stakes preparatory to the removal of about fifteen poles.

Texas Bitulithic Company had been awarded the road building contract, and on July 23 had moved a dragline to the section for the purpose of placing tile in a culvert. The dragline had a metal crane or boom which reached more than 45 feet into the air. J. J. West, concrete foreman for Texas Bitulithic Company and who had charge of the dragline crew, testified that he knew the electric lines along the highway were charged; that he knew the metal boom was a conductor of electricity and that if it "did get with electricity it would transport it to the ground and anybody that had hold of it." He further testified that he was signal man for the dragline operator; that they always tried to operate the boom at least two feet away from the wires; that when the accident occurred the boom was at least eighteen inches from the wire; that: "We picked up the piece and swung in the position, and it took a couple of men to push it in, and just as we swung in and stopped, and Mr. Jones went to push it in, the electricity came down the cable. * * * Sparks were coming out of Mr. Jones' shoulder. * * * I looked at the top of the boom as quick as I could and signaled the operator." M. W. Hargrove, the dragline operator, testified that West gave the signals.

"Did your crane come in contact with the closest wire to you? A. Yes, sir.

"Q. How did you get loose? A. Swung the crane away."

He knew that electricity would jump or arc. There was a conflict in the testimony as to whether the crane actually struck the wires or the current jumped to the crane. The electrical experts testified that "an arc from 11,000 volts probably would not exceed 1/8 or 1/4 of an inch; a very short space." Rice, the electric company's civil engineer, testified that he did not see Jones in any danger until the accident occurred, and that at the time of the accident he was going toward the crew to warn them not to get too close to the wires.

The appellants brought this suit on the theory that the doctrine of res ipsa loquitur applies. Under the facts here this rule has no application. The instrumentality which killed Jones was not in the exclusive possession and control of the defendant. The negligent operation of the dragline, by permitting the boom to come in contact with or close proximity to the wires, was the cause of the accident. Davis v. Castile, Tex.Com.App., 257 S.W. 870; Brigman v. Holt & Bowers, Tex.Civ.App., 32 S.W.2d 220.

The appellants contend that Southwestern Gas & Electric Company was negligent in not warning Jones of the danger of the boom coming in contact with its wires, and that this negligence was the proximate cause of his death. They rely here, as they did in the court below, on the case of Galveston-Houston Electric Co. v. Reinle, 113 Tex. 456, 258 S.W. 803. That case is not controlling here. Reinle was an invitee upon the premises of the electric company and was an employee of a contractor doing work for the defendant. The court announced the rule that "one cannot, for his own advantage, invite others to come on, or remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge." In the case at bar Jones was not an employee of the defendant electric company or of a contractor doing work for it. Jones was not engaged in any work beneficial to the defendant, and was in no wise an invitee of Southwestern Gas & Electric Company.

Of course the defendant was under a duty not to wilfully injure Jones. It was also under a duty to erect its poles and maintain its lines so as to guard against injury to persons using the highway. An electric company must exercise reasonable care to avoid injuries, and take such precautions "as the dangerous nature of its agency would render reasonably necessary and prudent." Jacksonville Ice & Electric Co. v. Moses, 63 Tex.Civ.App. 496, 134 S.W. 379, 382; Canyon Power Co. v. Gober, Tex. Civ.App., 192 S.W. 802; Smith v. Appalachian Electric Power Co., 4 Cir., 74 F.2d 647; Mississippi Power & Light Co. v. Whitescarver, 5 Cir., 68 F.2d 928; Yarn v. Ft. Dodge, D. M. & S. R. Co., 8 Cir., 31 F.2d 717.

The mere fact that Jones was injured by a current of electricity flowing from the power lines does not give rise to a cause of action against the defendant. It was necessary for the plaintiffs to prove that Jones was injured as the consequence of some negligent act on the part of Southwestern Gas & Electric Company. This they did not do. The lines were erected along the defendant's own private right-of-way, and they were maintained at an elevation of 34 feet 10 inches, much higher than required by statute and ordinary safety regulations. The plaintiffs have shown no negligence whatever on the part of the defendant. It is clear that Southwestern Gas & Electric Company could not reasonably foresee that Texas Bitulithic Company would negligently run its metal crane against the high tension lines. The negligence of the employees of Texas Bitulithic Company was the sole cause of the accident and the court properly instructed a verdict for the defendant. Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771, 77 Am.St.Rep. 898; Smith v. Texas Electric Service Co., Tex.Civ.App., 85 S.W.2d 808; Maggard v. Appalachian Electric Power Co., 111 W. Va. 470, 163 S.E. 27; Texas & P. R. Co. v. Bigham, 90 Tex. 223, 225, 38 S.W. 162; Thomas v. Wisconsin Power & Light Co., 213 Wis. 646, 252 N.W. 192.

The judgment is affirmed.