## ALPHONSO LINTON vs. WEYMOUTH LIGHT AND POWER COMPANY.

Norfolk.    March 7, 1905. — May 20, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Negligence.    Electric Light Company.    Wires.*

In an action against an electric light company for injuries from coming in contact with one of its wires charged with electricity, if it appears that the wire carried an alternating current of thirty-five hundred volts and that a current of one thousand volts is dangerous to life, that at the place of the accident the wire, though supported on poles, ran through branches of trees likely to come in contact with the wire and rub off the insulation, that the insulation consisted of a rubber cloth covering which it would not take long to rub off, and that there was a better method of insulation for wires going through trees, the question whether the defendant was negligent in not using the better method of insulation is for the jury.

In an action against an electric light company for injuries from coming in contact with one of its wires charged with electricity, if there is evidence that a wire which might have caused the accident had broken three hundred and twenty-five feet from the place of the accident, and that the defendant's superintendent had been notified by telephone of this break ten minutes before the accident and had promised to send a man to attend to it, and if there also is evidence that at the place of the accident a wire hung down over the gutter next to the sidewalk where the plaintiff was walking, in a loop within five or six feet of the ground, the question of the defendant's negligence should be submitted to the jury.

In an action against an electric light company for injuries from coming in contact with one of its wires charged with electricity, if it appears that the plaintiff at about half past nine o'clock in the evening, after boasting about his knowledge of electricity and poking a broken wire from the gutter to the sidewalk and back again with his umbrella, started to walk along the sidewalk, and that a loop of the same wire was hanging down between two poles about half way to the ground over the gutter adjoining the sidewalk, and if there is evidence that the wind at the time was blowing eleven miles an hour, and the plaintiff contends that the loop of wire was blown against him, while the defendant contends that the wind was not strong enough to blow the loop over the sidewalk and that the plaintiff meddled with the wire while it hung over the gutter, it is for the jury to decide on all the evidence in the case which theory is correct and whether the plaintiff was in the exercise of due care.

TORT for personal injuries from coming in contact with a wire charged with electricity, alleged to have been maintained negligently by the defendant, a corporation furnishing electricity for street and house use, while the plaintiff was walking on the

easterly sidewalk of Main Street in that part of Weymouth called South Weymouth at about half past nine o'clock on the evening of October 29, 1899.   Writ dated August 4, 1900.

At the trial in the Superior Court *Bishop*, J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*G. R. Swasey & A. P. Worthen,* for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendant.

LATHROP, J.   We are of opinion in this case that there was evidence sufficient to submit to the jury, both on the question of negligence on the part of the defendant, and of due care on the part of the plaintiff.

The wire with which the plaintiff came in contact was one for supplying power for house lighting, and carried an alternating current of thirty-five hundred volts, while a current as high as one thousand volts was dangerous to life, as the superintendent of the defendant company testified.   At the place of the accident the wire, though supported on poles, ran through branches of trees, and this the superintendent testified was a very unsatisfactory way; that the limbs are apt to come in contact with the wires and rub off the insulation; that the insulation of this wire was of rubber cloth covering; and that it would not take a very long time to rub off this covering.   There was also evidence that there was a better method of insulation when wires went through trees, and the question whether better insulation should have been used was for the jury.

There was evidence that a wire, which the jury might have found to be the same wire, had broken three hundred and twenty-five feet from the place of the accident; and that the superintendent had been notified by telephone of this break ten minutes before the accident, and had promised to send a man to attend to it.   The superintendent denied receiving this communication, but whether he did receive it or not was a question for the jury, and it was also a question for them whether, if he did receive it, he ought at once to have shut off the power.   See *Lutolf* v. *United Electric Light Co.* 184 Mass. 53.

There was evidence that at the place of the accident the wire hung down over the gutter next to the sidewalk where the plaintiff was walking, in a loop within five or six feet of the ground. In *Thomas* v. *Western Union Telegraph Co.* 100 Mass. 156, it was

said by Mr. Justice Hoar : " The fact that a telegraph wire is found swinging across a public way, at such a height as to obstruct and endanger ordinary travel, is in itself, unexplained and unaccounted for, some evidence of neglect on the part of the company whose duty it is to keep it in a proper and safe position, and should have been submitted to the jury."

There are other grounds upon which the plaintiff contends that the case should have been submitted to the jury on the question of the defendant's negligence, but we have stated enough to show that this question was for the jury.

The question whether the plaintiff was in the exercise of due care is more doubtful; but on the whole we are of opinion that this also was, under all the circumstances of the case, a question for the jury. About an hour before the accident, the plaintiff saw the broken wire emitting sparks from time to time, and he remained there watching it; he made various boasts about his knowledge of electricity, and poked the wire from the gutter on to the sidewalk with his umbrella; and when requested by a deputy sheriff to move it back into the gutter he did so. After about half or three quarters of an hour he started for his destination on the same side of the street. He had seen another person leave about two minutes before he did, going in the same direction. Then something happened to him, he did not know what. He testified that he did not leave the sidewalk, and paid no attention to the wires. The witness who left two minutes before he did testified that he saw a loop of the same wire that had emitted sparks, hanging down between two poles, about half way to the ground. The plaintiff was found in an unconscious condition on the sidewalk, with his hands grasping the wire. He was severely burned before he could be rescued. The theory of the plaintiff is that the loop was blown by the wind, which there was evidence was at that time eleven miles an hour, across the sidewalk, and that he came in contact with it. The theory of the defendant was that the plaintiff was walking near the edge of the gutter and meddled with the wire while it hung over the gutter, and that the wind was not strong enough to blow the loop over the sidewalk. Which theory was correct was for the jury upon all the evidence in the case. See *Bourget* v. *Cambridge,* 156 Mass. 391 ; *S. C.* 159 Mass. 388.

*Exceptions sustained.*