MARSHALL J. HAZLERIGG, by next friend, Appellant, v. P. M. DOBBINS.

**Master and servant:** RELATION : EVIDENCE. In this action for injuries to a minor, while in charge of the horses and riding the sweep of a circular horse power, the evidence is reviewed and held to show the relation of master and servant at the time of the accident.

**Same:** NEGLIGENCE OF MASTER. Where there was a peculiar danger in riding the sweep of a circular horse power, the question of whether defendant was negligent in permitting plaintiff, a minor, to ride upon the same in such manner that his feet were likely to be caught and injured, was for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE. In case of personal injury to a child under fourteen years of age there is a presumed incapacity, which must be overcome by proof that he was not in the exercise of the care and discretion usual to children of similar age, in order to defeat recovery on the ground of contributory negligence. In the instant case the question of whether plaintiff, twelve years of age, in the absence of specific warning as to the peculiar danger, was negligent in riding the sweep of a circular horse power, allowing his feet to hang below the same so that they might be caught in the machinery, was for the jury.

*Appeal from Buchanan District Court.*—HON. FRANKLIN C. PLATT, Judge.

THURSDAY, NOVEMBER 18, 1909.

REHEARING DENIED TUESDAY, JANUARY 18, 1910.

ACTION to recover damages for personal injuries alleged to have been received by plaintiff while in defendant's employ, and resulting from defendant's negligence. At the conclusion of the evidence, there was a directed verdict for the defendant. From judgment on this verdict, plaintiff appeals.—*Reversed.*

*E. E. Hasner,* for appellant.

*A. M. Cloud* and *Springer & Smith,* for appellee.

McCLAIN, J.—Plaintiff, a boy, barely twelve years of age, received severe and permanent injuries to his leg as the result of an accident, while, in charge of the horses, he was riding the sweep of a circular horse power used on defendant's premises in baling hay. The questions involved in determining the correctness of the court's ruling in directing a verdict for the defendant are almost entirely of fact, relating, first, to the inquiry whether the relation of master and servant existed between plaintiff and defendant at the time of the injury; and, second, to the inquiry whether there was contributory negligence on the part of plaintiff causing or contributing to his injury.

I. With reference to the existence of the relation of master and servant between the plaintiff and the defendant at the time of the accident, defendant, as a witness, testi-

1. MASTER AND SERVANT: relation: evidence. fied that the hay press was procured by him and brought upon his premises at the instance of one McElroy, who contracted to do the baling at a specified price per ton, defendant to furnish the help necessary to place the hay on the table, and McElroy to furnish the needed help and power for operat-

ing the machine, and that defendant hired to McElroy the team with which the circular horse power propelling the machinery was operated. According to his account of the transaction, plaintiff, a boy temporarily living in the neighborhood with his aunt, but whose home was in town, was secured by defendant to lead the horse which should furnish the power for operating a hay fork to get the hay from the barn to the machine, but, when the boy arrived, he was directed to drive the horses attached to the circular power operating the hay press, which he did at first by walking behind them. Later in the day, becoming tired, the boy was told by defendant that he might ride on the sweep back of the horses, but that he must be careful. The boy returned to his aunt's at the end of the first day of employment (Wednesday) with the arrangement that, if he were needed further, he would be telephoned for. On the next day the hay press was not operated, but on Friday morning plaintiff, without having been previously telephoned for, came to defendant's place, and defendant gave him fifty cents for his previous day's work, and told him he would not be needed further. Plaintiff did not, however, at once leave defendant's place, but came in with the men to dinner, and after dinner was again told by defendant that he was not needed. Defendant testified that he had no knowledge of plaintiff's employment about the horse power during the afternoon of that day when plaintiff was injured. Plaintiff testified, however, that, after he was paid off by defendant Friday morning, he was told that he was not needed because defendant thought he could drive the team himself, although he had a lame foot as the result of an accident while he was working on the press on Wednesday, but later in the forenoon he was told by defendant's employee who was throwing the hay down to the machine that he should go and start the horses on the power, and he did so while defendant was standing by the side of them trying to make them go, and that he then

got on the power and started to drive the horses, and defendant walked around to the front of the barn.

There was some evidence, therefore, that defendant must have known of plaintiff's return to the work of driving the horses on the power, riding on the sweep, and that this was with his assent, for defendant himself says that he commenced to drive the horses on the power that morning, and was unable to continue to do so on account of his lame foot, and he does not indicate that he secured any one else than plaintiff to do this work. It is true defendant testified that he was under no obligation to McElroy to drive the team or furnish any one to do so, but it clearly appears that he had undertaken to do this work, and he had on Wednesday put plaintiff at it, and on Friday had paid him for his employment on Wednesday. The jury might very well have found, therefore, that defendant was undertaking to drive the team on the power or furnish some one to do so; that on Friday morning he knew plaintiff was so employed; that he knew plaintiff was still there at noon when he came in with the men to dinner; and that to his knowledge some one was to continue to do that work for him in the afternoon. We think the jury might, therefore, have found that it was with defendant's knowledge and without objection that plaintiff resumed the driving of the team during the afternoon when he was injured. Plaintiff testified that, after dinner, he went to the machine, and assisted in hitching up the horses and started to drive them, and that defendant was about the barn at that time. The testimony is very meager as to how it came about that plaintiff resumed the driving of the horses in the afternoon, but we are impelled to reach the conclusion that the jury might have found that he continued to drive the horses in the afternoon with defendant's implied assent. This would clearly be sufficient to establish the relation of master and servant between the defendant and the plaintiff.

II. The negligence of defendant alleged was his per-

mitting the plaintiff with knowledge of his youth and inexperience to operate the horse power by driving the team while in a dangerous position, and it appears that defendant did direct plaintiff that he might ride on the sweep without giving him other caution than that he must be careful, and without explaining to him the danger of his foot being caught in the machinery, as it was in fact caught, causing the injury for which plaintiff seeks to recover damages. It is not necessary to explain now the precise danger involved to the plaintiff in riding on the sweep. It is enough to say that there was a danger peculiar to this particular piece of machinery as used in operating this press not incident to the ordinary operation of a circular horse power for other purposes, and that, without particular care on the part of plaintiff in riding on the sweep, his foot was likely to be caught, and severe injury was likely to result. No question is made as to the sufficiency of the evidence to show negligence of defendant if he directed or permitted plaintiff to thus ride on the sweep without caution as to the danger involved. It is practically conceded that there was sufficient evidence as to defendant's negligence to take the case to the jury, and the only question argued in this respect is as to plaintiff's contributory negligence, and to that question we now direct our attention.

*2. SAME: negligence of master.*

As plaintiff was only twelve years of age, mere knowledge on his part or opportunity to know that the method in which he was allowed to work in connection with this piece of machinery was dangerous would not be imputed to him as constituting contributory negligence. We have recently said in *Doggett v. Chicago, B. & Q. R. Co.*, 134 Iowa, 690, that prior to the age of fourteen years "there is a presumed incapacity which must be overcome in order to defeat recovery on account of contributory negligence by proof that the child did not exercise the care and discre-

*3. SAME: contributory negligence.*

tion usual with children of a similar age which is assumed to be less than that required of persons of mature years." Therefore it was for the defendant in this case to show that plaintiff did not exercise the care reasonably to be expected from children of that age in the operation of dangerous machinery with which they are not familiar. To sustain this burden resting upon defendant no evidence whatever was introduced. It is not contended that defendant had any reason to believe plaintiff was over fourteen years of age, and there is no evidence that he was familiar with the dangers involved in the operation of this particular piece of machinery. It appears that he was a bright boy in his studies, and that he had some knowledge by observation of machinery in general, and had done something with farm machinery, but there is not the slightest evidence that, aside from such observation as he may have made on the day he was injured and the previous day on which he was similarly employed, he had any knowledge of the dangers of this particular piece of machinery. He could, of course, see how the machine worked, and, if he had been a mature person, he might perhaps reasonably have been charged with knowing that, if he allowed his feet to hang below the sweep, they might be caught, but, as already said, he was not charged with the exercise of the judgment which would have been required of a mature person. We think that it was for the jury to say whether in view of plaintiff's immaturity and lack of experience, and the absence of specific warning as to the peculiar danger, plaintiff was negligent in riding on the sweep, and allowing his feet to hang below it, so that they might be caught in the machinery.

We reach the conclusion that a verdict for the defendant should not have been directed, and that the judgment must be *reversed*.