DIETRICH KIRCHOFF, Appellant, v. HOHNSBEHN CREAM-
ERY SUPPLY CO.

**Master and servant:** UNCOVERED MACHINERY: STATUTE: NEGLIGENCE:
EVIDENCE. The statute requiring factory machinery to be prop-
erly covered is intended as a protection against the carelessness
and ignorance of those who may incidentally come in' contact
therewith, and for the benefit of operatives, who by reason of
inadvertence or misfortune, might be injured thereby. The oper-
ation of a planing machine which is not properly covered as
provided by the statute is negligence on the part of the employer,
and in that sense must be regarded as dangerous; and it is im-
material that similar planers were in use in other factories or
that the one in question was of standard make.

**Same:** SUBMISSION OF ISSUES. Where the proof is such that an
issue of fact is raised concerning the proper protection provided
for machinery, the jury should be informed of the provisions of
the statute and instructed as to what would constitute a proper
cover; and if it conclusively appears that the machinery was not
properly covered the jury should be so told, and also that in
permitting its operation in that condition the master was negli-
gent. In this action for injury to plaintiff while operating a
planer the evidence is held to show that the machine was not
properly covered, within the meaning of the statute, and that
the court erred in submitting the question of whether it was a
dangerous machine.

**Same:** ASSUMPTION OF RISK: INSTRUCTIONS. Ordinarily where one
of mature years knows of the dangers incident to the operation
of machinery it will be assumed that he appreciated the risk.
And the knowledge exacted is that of the condition or defect in
the machine, and the appreciation relates to the danger arising
from its operation in that condition; and where the instruction
of the court as given as clearly exacted proof of appreciation of
the dangers as an element of assumption of risk as that requested,
the requested instruction was properly refused.

**Same:** DUTY TO WARN: EVIDENCE OF CUSTOM. The necessity of warn-
ing employees of the dangers incident to the use of machinery
arises out of the nature of the machinery, the dangers involved
in its use, and the experience and intelligence of the employees;

so that proof of the custom of others to warn and instruct employees regarding the dangers arising from the operation of similar machinery is immaterial.

**Evidence:** LIKE ACCIDENTS. Evidence that no other like accident had ever occurred in the operation of the machine in question was inadmissible on the question of negligence.

**Same:** ASSUMPTION OF RISK: CONTRIBUTORY NEGLIGENCE: EVIDENCE. Under the evidence in this case the question of whether plaintiff assumed the risk or was himself negligent in the operation of the planer were for the jury.

*Appeal from Bremer District Court.*—HON. J. F. CLYDE, Judge.

SATURDAY, NOVEMBER 20, 1909.

ACTION for damages resulted in a verdict and judgment for the defendant. The plaintiff appeals.—*Reversed.*

*Hagemann & Farwell* and *E. A. Dawson,* for appellant.

*Sager & Sweet,* for appellee.

LADD, J.—The defendant was engaged in manufacturing butter tubs and other creamery supplies, and in doing so operated machines such as a planer, groover, saws, and the like by steam power. The planer consisted of a steel shaft about three inches square, on which were bolted two blades about eighteen inches long and two and one-half inches wide. These were on opposite shoulders of the shaft, and extended over an eighth of an inch. There were bolts on the other shoulders by which to fasten blades when needed. The shaft was hung in an opening about six inches wide in a table or platform, and at either end was a pulley over which a belt run from the shaft below, and ordinarily turned the planer three thousand five hundred revolutions per minute. In front were

feed rollers which carried the board being planed over the knives. The only guard was "what is known as a 'hood guard.' It is simply a weight on the feed roller. It protects the knives from the front." It extended up and over to about the center of the knives, so that one feeding the machine could not see them. There was no other guard. In the morning of November 30, 1906, the plaintiff was engaged in planing tub bottoms about thirteen inches in diameter. He had his mittens on, and was putting the bottoms in or "feeding," and, as these came through, one Cook removed them from the other side. The evidence tended to show that, after several bottoms had passed through, the speed of the planer ran down, and another employee put rosin on the belt; also, that shavings piled up back of the machine. In the words of plaintiff: "The shavings were piled up in front of me, and higher up than where the boards came out. When I saw the shavings piled up there, I just reached over and tried to wipe them away, and my hand was caught." The result was the loss of his hand, because of which he demanded for damages. Several errors are assigned by appellant, of which appellee contends were without prejudice, for that the evidence was insufficient to sustain the allegations of his petition.

The court required the jurors to determine whether the machine was dangerous, and instructed them that, if it was, defendant should have informed plaintiff of the dangers, and otherwise it owed him no such duty. Exception is taken to this instruction, for that it is said to ignore the factory act directing that "all saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description therein shall be properly guarded." Section 4999-a2, Code Supp. 1907. If the machine was not "properly guarded," the operation of it constituted negligence, and in that sense it must be

1. MASTER AND SERVANT: uncovered machinery: statute: negligence: evidence.

regarded as dangerous. *Woolf v. Nauman,* 128 Iowa, 261. This being so, it was not material that similar planers were in use in some other factories, or that they were of standard make. *O'Connel v. Smith & Son,* 141 Iowa, 1. "The statute is intended as a protection, not only against the carelessness and ignorance of those who may incidentally come in contact with dangerous machinery while moving about in its vicinity, but it is also intended as a protection to the operatives themselves, who by reason of inadvertence or some misfortune may be injured by it." *Callopy v. Atwood,* 105 Minn. 80 (117 N. W. 238, 18 L. R. A. (N. S.) 593). See, also, *Kinyon v. Railway,* 118 Iowa, 349; *Bromberg v. Laundry Co.,* 134 Iowa, 38.

Was this planer "properly guarded" within the meaning of the law? If the proof was such that but an issue of fact was raised, the jury should have been advised of the provisions of the statute, and instructed what would constitute a proper guard. If it appeared conclusively that the machine was not "properly covered," it should have been so told, and that in permitting its operation in that condition the defendant was guilty of negligence.

2. SAME: submission of issues.

The record is convincing that it was not "properly guarded." To guard the saw it must have been covered in some way, and Webster's Dictionary defines "cover:" "To overspread the surface of one thing with another; to envelop; to shelter; to protect; to lay or set over; to extend over." The Century Dictionary: "To put something over, or on so as to protect or conceal; overlay; overspread; envelop with something." The Standard Dictionary: "To overspread or overlay with something so as to protect or hide; overlap." As employed in this statute, the manifest meaning is that something shall be put over the machine so as to protect those coming in proximity of or using it from being injured from the

planing knives. What such guard shall be is not specified save in exacting that it shall be proper. According to the lexicographers, "proper" means "fit, suitable, appropriate"; and to be guarded "properly" is to be so covered as to reasonably accomplish the design of guarding. A planer or other instrumentality mentioned in the statute is properly guarded when the device attached is of material and construction such as will shield those operating it or moving near it from contact therewith when in motion, at least when practicable, without unreasonably interfering with the efficiency of the machine. If not reasonably suitable and calculated for this purpose, the cover is not proper, and the proprietor in omitting to obey the mandate of the statute is guilty of negligence. As previously stated, the tin or sheet-iron hood guard extended from above the front roller over to above the center of the blades. This protected the person feeding the planer in pushing boards in, but left the knives entirely unguarded further back. In other words, the covering was of but half the planer, and the evidence is undisputed that the other half might have been covered without interfering with its efficiency in operation. Indeed, the evidence was to the effect that in all the larger factories planers are provided with blowers, and had been for many years. The blower is described as a sheet-iron hood cut so as to fit the machine and joined to a pipe with a fanning attachment, so that the suction draws all the shavings from the machine. It covers the knives so that it is impossible to get into them without removing it. Where the blower is not in use, a sheet-iron cover is bolted to the hood guard mentioned, and extends back about eighteen inches. Either furnishes the employee and those whose duties call them near the machine complete protection, and no suggestion that either is not practicable is to be found in the record. We are of opinion that the court erred in submitting to the jury whether

it was a dangerous machine. In permitting the operation of the planer without being properly guarded, the defendant was negligent, and the jury should have been so informed.

II. Complaint is made of the tenth instruction, in that, as is said, the court did not exact proof of appreciation of the danger as an element of assumption of risk.

3. SAME: assumption of risk: instructions.

Ordinarily, if one of mature years knows of the dangers, he may be assumed to appreciate them, and the instruction appears to proceed on this theory. That requested, confused knowledge of the danger with knowledge of the condition complained of, and in that respect was no clearer than that given by the court. The knowledge exacted is that of the condition or defect and the appreciation is that of the damage arising therefrom in the performance of the task assigned to the employee. If, notwithstanding such knowledge and appreciation, the servant continues at his task, he is held to have assumed the risk. This much is said in view of another trial, when a more specific instruction may prove helpful in aiding the jury to rightly decide the issues.

III. Plaintiff tendered proof of the custom and usage in other similar factories as to warning and instructing employees regarding the danger in planers and

4. SAME: duty to warn: evidence of custom.

particularly to point out the knives. On objection, the proffered testimony was excluded and rightly so. The necessity to instruct does not depend on a custom, but on the nature of the machinery and dangers involved in its use and the experience and intelligence of the employee.

IV. Defendant's manager was asked: "In the eighteen years (during which the planer had been operated)

5. EVIDENCE: like accidents.

was there ever a man hurt on that machine before Kirchoff got his hand hurt?" Over an objection as incompetent and immaterial the wit-

ness was allowed to answer: "No; never." This was error. *Hudson v. Railway,* 59 Iowa, 581; *Bell v. Railway,* 64 Iowa, 321; *Mathews v. City of Cedar Rapids,* 80 Iowa, 459; *Croddy v. Railway,* 91 Iowa, 598; *Langhammer v. City of Manchester,* 99 Iowa, 295; *Frohs v. City of Dubuque,* 109 Iowa, 219; *Potter v. Cave,* 123 Iowa, 98. All these decisions are to the effect that proof of like accidents may not be received as substantive evidence of that in controversy. In *Heinmiller v. Winston Bros.,* 131 Iowa, 32, evidence that other gentle horses had been frightened by a steam shovel located near a bridge was held admissible as tending to show that a horse because of its nature was likely to be frightened by such an instrumentality so located. The distinction undertaken to be drawn between that case and those cited was that in the latter "the ultimate questions were whether the defects existed. If they did, it was immaterial whether others had been injured thereby, while here it must be proven that the shovel was calculated to produce a certain effect on a certain class of animals. The testimony is not admissible for the purpose of proving that plaintiff's horse was frightened by the shovel, but for the purpose of showing how it affected a certain kind of animals." The machine was in the same condition as when installed eighteen years previous, so that no issue as to defendant's knowledge was involved. It was charged with the notice of the enactment of the statute in 1902 requiring the planer to be properly covered, so that the only design of this evidence must have been to disprove that the accident was the result of the negligence mentioned. It was not admissible for that purpose, and could have had no bearing on other issues. The evidence should have been rejected.

V. Appellee contends that, in any event, the evidence was conclusive that plaintiff had assumed the risk, and had contributed to the injury by his own negligence.

If so, as the result would be correct, the errors pointed
out could not have been prejudicial.   But
we think the evidence was such as to carry
both of these issues to the jury.   The
plaintiff was thirty-seven years of age, had
worked on a farm until 1905, and from July 1st of that
year until January 27, 1906, for defendant, when he had
fed the planer twelve or thirteen different times.   He had
worked at the planer every morning for about an hour dur-
ing the two weeks prior to receiving the injury in the morn-
ing of November 30, 1906.   According to his testimony,
he had given no attention to the construction of the machine;
his duty being merely to lay the boards on the table, so
that the roller in front caught and let them go through.
He was not bound to inspect the machine to ascertain
whether defendant had obeyed the law requiring it to be
properly covered, but might assume that this had been
done.   He testified that he had never seen the knives, and
thought them lower and closer to the front rollers, and that
they were covered, and that he reached over ten or twelve
inches farther than he supposed the knives were in the
attempt to brush the shavings away.   If it was improper
to wear mittens in operating the machine, he does not
appear to have known it.   He had not seen the shavings
pile up before, and yet, according to two witnesses, they
should have been cleared away, and it was his duty to
remove them.   The knives could not readily be seen.   A
witness testified that the planer shaft "looks just like a
square piece of shafting with bolts on all four sides," and
that "an inexperienced man might see the knives, and
not know they were knives at all.   They don't look like
any sort of a knife except a planer knife, which is differ-
ent from any other kind of a knife.   Until you notice
carefully, they appear just like a square shaft, and, after
noticing carefully, you find that there is a cutting edge
projecting over these shoulders an eighth of an inch.   Its

6. SAME:
    assumption
    of risk:
    contributory
    negligence:
    evidence.

brightness, the putting of your fingers on it, or getting up close to it, or making a careful examination, is all that would disclose to an inexperienced man that it in fact was a knife at all." It is apparent, then, that the issues as to whether plaintiff knew, or in the exercise of ordinary care must have known, of the condition of this machine, and whether he appreciated the danger in undertaking to clear the shavings away while it was in motion, were open for the determination of the jury, as was that of contributory negligence.

The errors pointed out were not obviated as contended, and the judgment is *reversed.*