### REYNOLDS v. IOWA SOUTHERN UTILITIES CO. (two cases).

Circuit Court of Appeals, Eighth Circuit.
September 9, 1927.

Nos. 7753, 7754.

1. **Electricity ⬉19(12)—Contributory negligence of boy injured by electric wire held for jury.**

In action for injury to boy 11 years old through coming in contact with electric wires, question of contributory negligence *held*, under the evidence, for the jury.

2. **Electricity ⬉19(7)—Negligence in failing to safely insulate electric wire running through tree in street used by boys in play held for jury.**

Under evidence tending to show that for two years boys in play had been accustomed to climb into a tree in a public street through which defendant maintained a highly charged electric light wire, the questions whether defendant had knowledge of such use of the tree by boys, and whether it was negligent in failing to keep its wire safely insulated, *held* for the jury.

3. **Electricity ⬉16(2)—Those in control of highly charged electric wires must exercise high degree of care in insulation and inspection.**

It is the duty of those in control of wires conveying electricity to use a high degree of care in insulation and inspection thereof, to protect those who may lawfully come in contact with such wires, and a negligent custom of insulation cannot relieve from such duty, where wires carrying a dangerous current pass through a play place of children of tender years.

4. **Electricity ⬉19(6)—Proximate cause of injury to boy from contact with electric wire held for jury.**

Question of proximate cause of an injury to boy coming in contact with electric wire running through tree *held*, under the evidence, one of fact for the jury.

In Error to the District Court of the United States for the Southern District of Iowa; Charles B. Davis, Judge.

Actions at law by Murlen Reynolds and by Wayne R. Reynolds, by his next friend, Murlen Reynolds, against the Iowa Southern Utilities Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Robert J. Bannister, of Des Moines, Iowa (Harley H. Stipp, Eugene D. Perry, Vincent Starzinger, and Fred A. Little, all of Des Moines, Iowa, and R. H. Spence, H. C. Beard, and Grant L. Hayes, all of Mt. Ayr, Iowa, on the brief), for plaintiffs in error.

D. W. Higbee and E. F. McEniry, both of Creston, Iowa (Frank S. Payne, of Centerville, Iowa, and Frank F. Fuller, of Mt. Ayr, Iowa, on the brief), for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. These two cases, arising out of the same accident, were tried and determined as one.

Murlen Reynolds, mother of Wayne R. Reynolds, brings suit in one of the cases for loss of services and for the nursing of and caring for Wayne R. Reynolds, a minor, and in the other the minor, through his mother as next friend, asks damages for personal injuries alleged to have been sustained by him in the town of Mt. Ayr, Iowa, on the 22d day of August, 1924, by coming in contact with electric transmission lines of defendant in error, the claim being that the wires of defendant in error passed in proximity to and through a large tree standing in a public street in the said town of Mt. Ayr, which tree was used as a play place by the boys of the neighborhood; that defendant in error failed to make adequate provision for the protection of the boys playing in said tree, and, because of the breaking of a limb thereof, said minor, while so playing, fell onto one of defendant in error's wires passing through the tree, resulting in serious burns. We confine our consideration to the writ of error in the personal injury case, as its determination is decisive of the writ of error in the other case.

At the close of plaintiff in error's testimony defendant in error moved for a directed verdict on a number of grounds, viz. that plaintiff in error was guilty of contributory negligence; that there was no construction or

preparation of apparatus shown as constructed or prepared by defendant in error which would constitute an invitation to plaintiff in error to approach defendant in error's wires or put himself in place of danger; that plaintiff in error failed to show any knowledge on the part of the defendant in error of the condition of the electric light pole or tree as to crossbars or steps attached thereto at the time of the accident complained of; that the evidence failed to show any negligence on the part of defendant in error which could be construed as a proximate cause of the injury complained of; that the facts established did not entitle plaintiffs in error to the relief demanded, or to any relief. The court sustained the motion on the ground that no negligence was shown by the evidence.

[1] The injured boy was 11 years old at the time of the injury, and, while he knew that the wires carried electricity, he did not have full knowledge of the effect which the electricity might have upon him. In view of his age, unquestionably under the testimony presented the question of contributory negligence was for the jury. Washington & G. R. Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434; McEldon v. Drew, 138 Iowa, 390, 116 N. W. 147, 128 Am. St. Rep. 203; Hazlerigg v. Dobbins, 145 Iowa, 495, 123 N. W. 196; Long v. Ottumwa Railway & Light Co., 162 Iowa, 11, 142 N. W. 1008; Felton v. Aubrey (C. C. A.) 74 F. 350; Adams v. Southern R. Co. (C. C. A.) 84 F. 596.

The case seems to have been tried and determined on the attractive nuisance theory. The principal cases relied on to sustain the action of the court are New York, New Haven & Hartford Railroad Co. v. Fruchter, 260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173, and United Zinc & Chemical Co. v. Britt et al., 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. In the Fruchter Case, while the bridge where the boy was injured was a public bridge, the railroad company maintained the wires and bridge framework. The injured boy had climbed to the topmost girder of the bridge, and thence up a tower, where he touched a live wire and was injured. It was held the railroad company, which maintained the wires and bridge framework, could not be liable on the theory of invitation. In United Zinc & Chemical Co. v. Britt, supra, the injured children had come upon the petitioner's land, had gone into certain water there standing, were poisoned, and died. The decision was based on the fact that the children were

trespassers. Neither of these cases is in point, for the reason that in both of them the parties injured were trespassers.

It seems to us the doctrine of attractive nuisance is not applicable here at all. Plaintiff in error was not a trespasser. The tree through which the electric wires ran was in a public highway. The boy had a right to be in the tree. If plaintiff in error had climbed one of defendant in error's poles and touched the high-tension wire and been injured, the Fruchter Case might be urged as in point.

[2] This case seems to be merely one based on negligence, and in view of another trial we refrain from any particular discussion of the evidence further than to say that there was evidence from which a jury could find that the tree was in a public street; that the defendant in error maintained along the street and through the tree a high-tension wire or wires over which a dangerous current of electricity was carried; that the boys of the neighborhood had made use of the tree as a play place for at least two years prior to the accident to plaintiff in error; that they had part of the time used ropes to get onto the branches, but could have gotten into the tree to play without the use of ropes or cleats; that for about three weeks before the accident, in order to more readily climb the tree, cleats had been nailed by some of the boys on the pole of the company, which was close to the tree, and passed up through its branches. Under these circumstances, it seems clear that the question of the knowledge of defendant in error as to the use of the tree as a play place for boys of tender years was for the determination of the jury.

[3] Undoubtedly the company had been granted the legal right by the proper authority to transmit the dangerous electric fluid along the street, but it was unquestionably its duty, in dealing with this dangerous agency, if it had knowledge that the tree was used as a play place by children of tender years, to use a high degree of care in insulating its wires through the tree, and to use a similar degree of care in inspecting the same and keeping them properly insulated. There is no contradiction of authority as to the duty of those in control of wires conveying the dangerous agency of electricity to use a high degree of care in insulation and inspection thereof to protect those who may lawfully come in contact with said wires. The rule is concisely stated in Colusa Parrot Mining & Smelting Co. v. Monahan (C. C. A.) 162 F. 276, as follows: "At points or places where people have the right to go for work, business, or pleasure

the insulation and protection should be made as nearly perfect as reasonably possible, and the utmost care used to keep them so." And in 20 Corpus Juris, p. 355, § 42: "The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to go on business or pleasure.

It is said that worn or insufficient insulation is worse than none, since it gives a false appearance of security, but this has been denied. The failure to insulate is not excused by the fact that it may be expensive, or that wires carrying similar currents are not insulated elsewhere. But the fact that the methods of insulation suggested involve a large expense is a matter to be considered in determining whether defendant exercised due care, under all the circumstances of the case, in not insulating its wires. It has been held that a company need not insulate its wires against electricity having its origin in the clouds or atmosphere. The duty to insulate does not extend to the entire system, or to parts of the line where no one could reasonably be expected to come in contact with it." Curtis, Law of Electricity, § 512, states: "An electric company, maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire. * * * The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high tension wires insulated in places where children when climbing a tree will come in contact with them."

As stated in Joyce on Electric Law, § 445: "A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in this condition at such places." See, also, Meyer v. Menominee & Marinette Light & Traction Co., 151 Wis. 279, 138 N. W. 1008; Knowlton v. Des Moines Edison Light Co., 117 Iowa, 451, 90 N. W. 818; Graves v. Interstate Power Co., 189 Iowa,

227, 178 N. W. 376; Thomas v. Wheeling Electrical Co., 54 W. Va. 395, 46 S. E. 217; Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924; Daltry et al. v. Media Electric Light, Heat & Power Co., 208 Pa. 403, 57 A. 833; Chickering v. Lincoln County Power Co., 118 Me. 414, 108 A. 460; Consolidated Electric Light & Power Co. v. Healy et ux., 65 Kan. 798, 70 P. 884; McKiddy v. Des Moines Electric Co., 202 Iowa, 225, 206 N. W. 815; Union Light, Heat & Power Co. v. Arntson (C. C. A.) 157 F. 540.

The following are cases arising out of injuries to children playing in trees under circumstances somewhat similar to those in this case, and in which the rule as to the high degree of care required of those dealing in electricity is recognized: Linton v. Weymouth Light & Power Co., 188 Mass. 276, 74 N. E. 321; Mullen et al. v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54, 77 A. 1108; Neville v. Bonsal et al., 166 N. C. 218, 81 S. E. 448; Williams v. Springfield Gas & Electric Co. (Mo. App.) 187 S. W. 556; Id. (Mo. Sup.) 202 S. W. 1; Sweeten v. Pacific Power & Light Co., 88 Wash. 679, 153 P. 1054.

The court evidently sustained the motion for directed verdict on the theory that there was no evidence that the wires could be so insulated as to afford protection to the children playing in the tree, saying in ruling thereon: "Now, it is true that plaintiff's expert said that there is insulation that would protect, rubber insulation. There is no evidence that that is insulation that is used for that purpose. The standard use, according to this expert, is not to put rubber insulation through trees and not to use it on transmission lines generally, and I do not see how we could ask this jury to say that they should use rubber insulation, when an expert on the subject says it is not in use and it should not be used. Therefore it seems to me that, before that issue should be submitted to the jury there should be some testimony that there is a practical insulation in use or capable of being used, which would prevent an injury, in case one came in contact with the wire."

The court also said that it had been unable to find any evidence of negligence on the part of the defendant in error. A reference to the record does not bear out the claim of no evidence in support of the theory of negligence. There was testimony that the insulation upon these wires was all that could be provided, and there was testimony to the contrary. There was also testimony that the

wires had a ragged appearance and in this particular tree snapping and sparks from the wires had been observed for a considerable period of time. Witness Rich testified:

"There are forms of covering for electric wires which would insulate a wire carrying 2,300 volts of electricity. There are three different types of insulation for wiring; the oldest one is rubber, and then oiled linen was developed, and now we have a third, a paper insulation. Rubber insulation is used on wiring such as is installed in houses, and for the lower voltages and the extreme or higher voltages it is customary now to use oiled linen or paper insulation.

"Q. In case a wire which is exposed to the elements in passing through a tree was to be insulated, so as not to be dangerous to human life, if a person should come in contact with it, state whether or not the rubber-covered wire would be a practical insulation for that purpose. A. Yes, sir; it would. * * *

"Q. Mr. Rich, if a boy or a young man came in contact with a wire carrying 2,300 volts alternating current of electricity while standing in a live tree—that is, a tree which had life in it—where the wire had been covered with weather-proof insulation which was several years old, what would you say would be the result to be expected? A. Under the conditions as you have described them, it would either cause death or severe burning."

On cross-examination he said:

"The kind of wire with weather-proofing is what is customarily used in the state electrically. The weather-proofing on the wire is not principally for the purpose of making it safe from contact. It is there for two purposes. It makes a better appearance in the air, and also forms a mechanical protection to the copper wire. It does not materially interfere with electricity escaping from the wire if a conducting body is brought in contact with it. The rubber insulated wire is not in general use for overhead distribution systems. The weather-proofing is what I would call the standard in use in Iowa."

On redirect examination:

"Q. What is the fact, Mr. Rich, as to what is the usual and standard construction in places where persons can be expected to come in contact with wires carrying a current such as 2,300 volts? A. Well, that would depend entirely upon the local conditions surrounding each individual case. It is standard practice that, wherever wires carrying 2,300 volts are so situated that there is danger of the public

coming in contact with them, they are thoroughly protected and insulated.

"Q. By insulated you would not mean they would be merely covered with weatherproofing? A. No, sir."

Rich's testimony that electric light companies did not customarily insulate wires with rubber insulation where they passed through trees referred undoubtedly to a usual tree, not surrounded with such circumstances as in this case. He could not well have meant to apply the same to a tree which for a long period of time had been used as a play place by children of tender years. In any event, however, a negligent custom would not excuse defendant in error from exercising a high degree of care to see that wires, known by it to be carrying a dangerous current of electricity, sufficient to injure those coming in contact therewith, through a play place of children of tender years, were properly insulated and so kept. Wabash Ry. Co. v. McDaniels, 107 U. S. 454, 2 S. Ct. 932, 27 L. Ed. 605; Texas & Pacific R. Co. v. Behymer, 189 U. S. 468, 23 S. Ct. 622, 47 L. Ed. 905; Nyback v. Champagne Lumber Co. (C. C. A.) 109 F. 732; Kirchoff v. Hohnsbehn Creamery Supply Co., 148 Iowa, 508, 123 N. W. 210; Reddington v. Blue & Raftery, 168 Iowa, 34, 149 N. W. 933; Kirby v. Chicago, R. I. & P. R. Co., 173 Iowa, 144, 155 N. W. 343.

We are satisfied the question of the exercise of proper care in the insulation and maintenance of the wires passing through the tree was a fact one under this record. Thomas v. Wheeling Electrical Co., 54 W. Va. 395, 46 S. E. 217; Nelson v. Branford Lighting & Water Co., 75 Conn. 548, 54 A. 303; Linton v. Weymouth Light & Power Co., 188 Mass. 276, 74 N. E. 321.

[4] The question of proximate cause was also one for the jury.

The court also held that plaintiff in error had not sufficiently pleaded defendant in error's negligence in maintaining a high and dangerous voltage of electricity on the wire that came in contact with the plaintiff in error. It is to be noted that an amendment was filed to the complaint as follows:

"The defendants were negligent in failing to protect and guard the dangerous electric current which they were conducting into and through said tree, so that the same would not harm children who might be attracted thereto and the defendants were negligent in not having the wires upon which said current was carried into and through said tree and to said pole, insulated so that they would not harm

a child or children who might be upon said pole or in said tree."

It seems to us the objections to the pleadings are overrefined and that the case as to negligence is sufficiently stated. Kansas City So. Ry. Co. v. Kaw Valley Drainage Dist., 233 U. S. 75, 34 S. Ct. 564, 58 L. Ed. 857.

The questions here are peculiarly for the jury. We think the court erred in directing a verdict. It was for the jury to say whether the company had actual or implied knowledge of the use of the tree by children as a play place. If the jury should find such knowledge, then it was for it to say under the evidence whether the defendant in error had exercised the high degree of care demanded by the law in the insulation, maintenance, and inspection of its wires passing through the tree.

In view of our conclusion, the alleged error as to the exclusion of certain evidence is unimportant. The judgment in both cases should be reversed, and the cases remanded to the trial court for further proceedings in harmony with the views herein expressed; and it is so ordered.

Reversed.