## IOWA–ILLINOIS GAS & ELECTRIC CO. v. YOUNG.

No. 14000.

United States Court of Appeals
Eighth Circuit.

Jan. 31, 1950.

Dan C. Dutcher, Iowa City, Iowa (Charles D. Waterman and W. B. Waterman, Davenport, Iowa, were with him on the brief), for appellant.

Scott Swisher and D. C. Nolan, Iowa City, Iowa (Swisher & Swisher, Iowa City, Iowa, were with them on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

### WOODROUGH, Circuit Judge.

This appeal is to reverse a judgment for $11,500 rendered on the verdict of a jury for damages for personal injuries suffered by plaintiff and attributed to negligence of the defendant  The plaintiff was a boy of the age of twelve years past at the time of the accident, and in company with five other boys of similar age was climbing about upon the superstructure of a public bridge across the Iowa River in Iowa City, Iowa, known as the Benton Street bridge, when he slipped and grabbed hold of an adjacent transmission wire strung upon the bridge, charged with a high voltage of electricity, sustaining shock and burns necessitating the amputation of his right arm. The charge of negligence upon which the case was submitted to the jury was:

"That the defendant was careless and negligent in the construction, ownership and maintenance of said transmission lines at the time and place where the plaintiff herein was injured, in failing to exercise ordinary and reasonable care to properly insulate said electric transmission wires and to have said transmission wires so placed that this plaintiff and others might not reasonably come in contact therewith and that the defendants failed to exercise reasonable care and diligence in not knowing or reasonably foreseeing that this plaintiff and others might come in contact with said electric transmission wires in the location and position that said wires were in at the time and place.

"And in determining whether or not the defendant was negligent, you will consider only the negligence charged by the plaintiff in this particular, if it has been proven, and then only such negligence, if any, as was the proximate cause of the injury to the plaintiff."

It appears that the Benton Street bridge was an old two-span steel structure which had long been closed to the vehicular traffic for which it was intended but was still in use by pedestrians. The Benton Street playgrounds were about a block and a half to the East of it and underneath it there was a sand bar in the river and a "good swimming hole." On the afternoon of July 12, 1948, five other boys and the plaintiff went swimming near or under the bridge and then began climbing up on its superstructure. The plaintiff followed along after the other boys. A heavy upright member of the bridge truss at its northeast corner afforded easy means of access up to the chord of the truss because strips of metal were attached to it lattice fashion and formed a ladder of a sort from the bridge floor to the point where the chord was joined to the upright. That point was a little less than fifteen feet above the floor of the bridge and the boys readily mounted up to it one after the other and passed on along the top of the chord. The chord was fifteen inches wide on top and all of the boys except the plaintiff proceeded safely over it for considerable distances. The plaintiff followed after the other boys and was crawling on his hands and knees along the top of the chord and was about eight feet beyond the upright member when he got dizzy and started to crawl back. In doing so he slipped and "grabbed hold of" the wire next to him. The wire ran parallel with the chord on which plaintiff was crawling and was set seventeen inches to the north of it. Although the wire was covered with insulation to protect it from the weather, it was

not insulated to afford protection to a person coming in contact with it and carried a dangerous voltage (2300 volts) of electricity. The shock rendered the plaintiff unconscious and when his right hand became disengaged from the wire he fell. His fall was broken by brace rods running up to the chord and he was taken off them just above the hand rail of the bridge a few feet above the floor.

The appellant contends for reversal of the judgment that the court erred in denying the motion for directed verdict made by defendant at the conclusion of all the evidence on the ground of (1) insufficiency of the evidence to show negligence of defendant, or (2) that any negligence of defendant was the proximate cause of plaintiff's injury, and (3) that plaintiff's own negligence and voluntary exposure to known danger was conclusively shown to be the proximate cause.

That the wires were maintained and operated by the defendant company was not in dispute but its position in the trial court and on this appeal has been that its wires were strung upon the bridge in strict conformity with proper and approved methods of installation and that it was not guilty of any negligence in so maintaining and operating them. Conceding that the wire was accessible to and was seized by the plaintiff from his position on the chord of the bridge truss, the appellant contends that it was not charged with knowledge or reasonable grounds to anticipate that anyone would come into such a position in relation to its wires. It stresses that it is provided in a booklet of Safety Rules for the Installation and Maintenance of Electric Supply and Communication Lines bearing the imprimatur of the United States Department of Commerce that when wires of the voltage here in question are attached to bridges the minimum clearance to be left between the wires and ordinarily inaccessible portions of the bridge is half a foot and the closest wire here was seventeen inches.

■ But we think the trial court rightly interpreted and applied the controlling Iowa law in holding that the question of negligence was for the jury. The numerous photographs of the Benton Street Bridge introduced by both parties show clearly that it did not present the same kind of a picture at the time of the accident as would normally be presented by such a large general traffic bridge within the limits of a city. Though still open to the public, it could attract only a small class. In its state of abandonment from its main intended purposes and its proximity to the children's playgrounds and to the boys' swimming hole, it may be said to suggest a different measure of care in the maintenance of high voltage electric wires strung upon it.

■ It is true defendant was not legally bound to safeguard against occurrences that could not reasonably be expected or contemplated as likely to occur. Cox v. Des Moines Electric Light Co., 209 Iowa 931, 938, 229 N.W. 244. But if defendant or its officers or agents knew or should have known the use which young boys made or were likely to make of this public bridge, then the measure of care taken in placing and maintaining wires on the bridge should have been commensurate with the likelihood of the occurrences of injuries through contact with the wires. It was not necessary that the precise accident which occurred be reasonably foreseeable or that the particular manner of it be contemplated. It is enough if the jury might reasonably find that some injury was likely to follow. The record convinces that here there was sufficient evidence to go to the jury on this question of defendant's knowledge and for the jury to find that defendant either knew or should have known that young boys were playing and climbing on the bridge. Defendant's superintendent of electrical distribution, Mr. Frank Shaffer, testified that he had never seen boys climbing on the superstructure of the bridge, but that he had seen boys at different times swimming and playing around the bridge. Mr. Fred Gartcke, city engineer of Iowa City, testified: "Q. Well, do you have any knowledge whether it is from your personal observation or not that they [boys] were or were not climbing on the bridge? A. I have had

the watchman,[1] that is during the day we had the watchman there, I have had him remark several times he had a little trouble with the kids down in that end of town."

William Wonick, employee of the Jefferson County material yards, located about 150 feet east of the bridge, testified that he had been employed at that location for the past eight years and during all that time had seen boys playing around the bridge and climbing on the superstructure. Another witness, Byron Hopkins, a painter in Iowa City, who had previously lived near the bridge, testified that prior to this accident in question he had observed on several occasions boys between the ages of 10 and 15 years playing on the bridge and climbing about the superstructure. C. J. Sample, former alderman, councilman and milk inspector in Iowa City, testified that between the years 1923 and 1947 he had frequently seen boys playing on the bridge and climbing on the uprights and overhead beams. Robert Dautremont, one of plaintiff's companions on the day in question, testified that he had never climbed around the bridge before that day, but had seen other boys climb there "lots of times * * * after birds' nests and so forth." Another companion on that day, Raymond Walters, testified that he had on one occasion seen boys climbing on the bridge prior to July 21, 1948. We believe that from this testimony, and in view of the close proximity of a public playground to the bridge and the swimming hole almost directly underneath it, that there was sufficient evidence for the jury's determination and that the evidence, moreover, was such that a jury might reasonably find that defendant knew or should have known of the use that young boys were making of the bridge and the consequent likelihood of some injury due to contact with the electric wires strung so close to the truss chord. In the case of Reynolds v. Iowa Southern Utilities Co., 8 Cir., 21 F.2d 958, plaintiff, an eleven year old boy, was seriously burned when he came in contact with one of defendant's wires which passed through a tree, standing in a public street in the town of Mt. Ayr, Iowa, which tree was used as a play place by the boys of the neighborhood. While plaintiff was climbing in the tree, a limb broke and plaintiff fell onto the electric wires. Suit was brought against the defendant utilities company for its negligence in not making adequate provision for protection of the boys playing in the tree. At the close of plaintiff's case the trial court directed a verdict for defendant on the ground that no negligence was shown by the evidence. Defendant had based its motion, among other reasons, on the fact that there was no showing of its knowledge, actual or implied, of the use of the tree by the children as a play place. On appeal this court reversed the trial court and remanded the case, and on the question of knowledge stated 21 F.2d at page 959: "This case seems to be merely one based on negligence, and in view of another trial we refrain from any particular discussion of the evidence further than to say that there was evidence from which a jury could find that the tree was in a public street; that the defendant in error maintained along the street and through the tree a high-tension wire or wires over which a dangerous current of electricity was carried; that the boys of the neighborhood had made use of the tree as a play place for at least two years prior to the accident to plaintiff in error; that they had part of the time used ropes to get onto the branches, but could have gotten into the tree to play without the use of ropes or cleats; that for about three weeks before the accident, in order to more readily climb the tree, cleats had been nailed by some of the boys on the pole of the company, which was close to the tree, and passed up through its branches. Under these circumstances, it seems clear that the question of the knowledge of defendant in error as to the use of the tree as a play place for boys of tender years was for the determination of the jury."

The trial court instructed the jury in the instant case: "You are instructed that the defendant company in the maintenance of

---

1. There was, approximately two years prior to 1948, a watchman employed to regulate and prohibit vehicular traffic on the bridge.

its transmission lines was bound to use that care and caution that a reasonably prudent person would exercise under the same or similar circumstances. And in determining the question of whether or not the defendant was negligent in the particular relied upon by the plaintiff as charging negligence, it is proper for you to consider, together with all the other facts and circumstances, that the handling of electricity is a matter that requires skill and understanding of the dangers thereto; that a current of electricity of high voltage is a dangerous and deadly element traveling through and along wires and other conductors without being visible or easily detected; and a person who deals in it and handles such an element is bound to use a degree of care commensurate to the dangers involved to protect others from harm." And: "There is no direct evidence that any officer of the defendant company knew that boys were climbing upon the superstructure of the bridge. So, in considering whether the defendant company was negligent, you are limited to a determination of the question whether, in the exercise of reasonable care and diligence, the defendant, or its officers, should have known that boys were apt or likely to use the superstructure of the bridge to climb upon and to come in contact with the wires of the company."

We think the submission of the issue of defendant's negligence on the instructions given is supported by the decisions of the Supreme Court of Iowa and the law of Iowa as declared by this Court. Reynolds v. Iowa Southern Utilities Co., supra; Yarn v. Fort Dodge, Des Moines & Southern Ry. Co., 8 Cir., 31 F.2d 717; McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N.W. 815. And compare Parsons v. Appalachian Electric Power Co., 115 W.Va. 450, 176 S.E. 862, 100 A. L.R. 615; Wise v. Southern Indiana Gas & Electric Co., 109 Ind.App. 681, 34 N. E.2d 975; Consolidated Electric Light & Power Co. v. Healey, 65 Kan. 798, 70 P. 884.

(2) It appeared on the examination of plaintiff that plaintiff experienced dizziness when he was crawling on his hands and knees up the slope of the truss chord of the bridge and defendant contends that the dizziness should be deemed the proximate cause of the injuries he sustained.

On his cross examination by defendant certain questions put to plaintiff and his answers were:

"Q. Now, Bob, you said that when you got up on the bridge there, you got dizzy, didn't you? A. Yes.

"Q. Had you ever got dizzy before when you were up on some high place? A. Yes.

"Q. Had that happened several times before? A. Yes.

"Q. And when you got up there you had, on a high place, you would get dizzy, and you would have to come back down, is that right? A. Yes.

"Q. And you knew it was dangerous to climb on that high place on that bridge, didn't you, Bob? A. Yes.

"Q. Because you were in the habit of getting dizzy when you got up on high places, isn't that right? A. Yes."

But the plaintiff did not say that dizziness caused him to fall or to grasp for the wire. On his direct examination, he testified, "I got dizzy and started to crawl down", and it could be inferred from his testimony as a whole that it was his subsequent slipping and starting to fall that caused his grabbing at the wire and that the dizziness had no other effect than to cause him to start to crawl back down.

In recognition of the evidence and defendant's contention the court instructed: "On the question of proximate cause, you are instructed that the defendant claims that the proximate cause of plaintiff's injury, if any, was not the result of any negligent act or failure to act on its part, but was solely and exclusively the result of plaintiff's own act in climbing to a height where he became dizzy and that his dizziness was alone responsible for his injury. And on this you are instructed that if the evidence establishes that the sole cause of plaintiff's injury, if any, was his dizziness and not because of any negligent act on the part of the defendant, then his injuries, if any, would not be the proxi-

mate result of any negligent act on the part of the defendant, and under that situation, he cannot recover in this case."

We think the court's instruction fully preserved to the defendant the full measure of its right in respect to the matter of plaintiff's dizziness.

(3) As to the claimed contributory negligence of the plaintiff, it appears from the evidence that plaintiff and Bob Dautremont rode double on the Dautremont boy's bicycle to the bridge, that the Dautremont boy was some two years older than the plaintiff, that plaintiff followed the other boys and was the last boy to climb up on the chord, that he had been told that the wires were telephone wires, and that at no time did he see any danger sign on or about the bridge. Under these circumstances and in view of all the testimony, the trial court instructed the jury as follows in respect to plaintiff's contributory negligence:

"As you have been heretofore instructed, before the plaintiff can recover he must establish by a preponderance of the evidence that such negligent act or acts on the part of the defendant company was the proximate cause, that is, the moving or producing cause, of his injury; and also, that he himself was free from negligence on his part which in any way or manner contributed to his injury and damage.

"And on this you are instructed that a child under 14 years of age is under the laws of the State of Iowa presumed to be incapable of contributory negligence and you have a right to assume therefore that the plaintiff, Robert Young, was not guilty of contributory negligence which in any way or in any manner contributed to his injury, unless you find that the evidence overcomes this presumption.

"You are instructed that the law imposes upon minors of the age of the plaintiff in this case, the duty of giving such attention to their surroundings and to exercise care to avoid danger as may fairly and reasonably be expected from persons of their age and capacity and if such minor fails to give such attention and exercise such care as may fairly and reasonably be expected from one of his age, he would be guilty of contributory negligence and may not recover.

"You are instructed that if one is of sufficient age to know and appreciate the danger that attended his act and voluntarily exposes himself to that danger, he cannot complain if he is injured. He cannot go into a place, the danger of which he appreciated and understood and recover if he is injured.

"In determining this question of whether or not the plaintiff Robert Young was himself guilty of negligence on his part which in any way or manner contributed to his injury and damage, you should take into consideration the presumption heretofore mentioned and all the facts and circumstances surrounding him at the time of and just prior to his injury, if shown and as shown by the evidence in the case; his knowledge or means of knowledge of the proximity of a high tension electric wire, if shown and as shown by the evidence; his knowledge or means of knowledge of the wire being charged with electricity, if shown and as shown by the evidence; his investigation or lack of investigation of whether there was a current of electricity on such electric wire, if shown and as shown by the evidence; any warning of danger that may have come to him as to there being an electric current in the wires, if shown and as shown by the evidence; his investigation or lack of knowledge of the potency and effect of the power of electricity, if shown and as shown by the evidence; and together with all the other facts and circumstances as shown by the evidence, it is for you to say and determine whether or not the plaintiff at the time of his injury was exercising that degree of care and discretion that is ordinarily exercised by a child of like age; and say and determine whether or not he was guilty of negligence as shown by the evidence, to overcome the presumption that he was not so guilty of negligence which contributed in any way or in any manner to his injury.

"If you have found that the plaintiff was not guilty of contributory negligence on his part and you have found that the

defendant was guilty of negligence in the manner charged as above set out, and that such negligent act on the part of the defendant was the proximate cause of the injury to the plaintiff, then your verdict must be for the plaintiff in some amount.

"If you have not so found, your verdict must be for the defendant."

We think that in submitting the issue of contributory negligence to the jury upon the foregoing instructions the court rightly interpreted and applied the controlling Iowa law. Webster v. Luckow, 219 Iowa 1048, 258 N.W. 685; Reynolds v. Iowa Southern Utilities Co., supra, 21 F.2d at page 959.

Finding no error in the proceedings, the judgment is

Affirmed.